SOUTHWICK, P.J.,
for the Court:
¶ 1. Yvonne Lee was awarded damages in the amount of $500,000 after a jury trial on her complaint for personal injuries suffered in a fall in a Kmart store in Vicksburg. Kmart appeals, alleging that a video tape of surgical procedures should not have been played for the jury, and that Kmart’s motions for judgment notwithstanding the verdict, a new trial, or at least a remittitur should have been granted. We find no error and affirm.
FACTS
¶ 2. On the day of this incident, a clerk at Kmart was told by a customer that antifreeze had been spilled on the floor in an aisle. The clerk, Grover Sanders, closed his register to investigate. Once he saw the spill, he told two female employees to stay near the spill and warn customers while he went to get cleaning supplies. There was evidence that while the two warned customers, another female employee came up to the two women to show them some flowers that she had received.
¶ 3. At the same time, Yvonne Lee was at the Kmart. She testified that she saw the three women talking, but she did not notice the spill. The clerk, Sanders, and one of the women testified that they saw Lee and yelled to warn her. Lee testified that she did not hear the warning, slipped in the antifreeze and fell. While attempting to get up she fell again on her right shoulder. Lee went to a hospital emergency room. Lee was given some pain medicine and told to return if needed.
¶ 4. Lee returned to the emergency room a few days later after experiencing some pain in her back and being unable to raise her arm. She was referred to another doctor, Dr. Porter. Dr. Porter found that Lee suffered from a herniated disc and prescribed physical therapy. When Lee *106 did not achieve any relief, Dr. Porter referred her to a spine specialist, who in turn referred her to Dr. Sidney Berry. Dr. Berry prescribed therapy and cortisone shots. These too did not provide relief. She was next referred to a pain specialist in Memphis, Dr. Steven Gipson. Dr. Gip-son performed a “shunt” procedure that did not alleviate any pain. A diskectomy was then performed after which she suffered a staph infection that required additional surgery.
¶ 5. Still suffering from pain, Dr. Gipson implanted a spinal stimulator in Lee. The device is connected to the damaged nerve to provide a sensation to mask the pain. Although the stimulator did provide some relief to Lee, as she increased her activities her pain increased. At this time, a morphine pump was implanted in order to provide continuous pain medication to the nerve site. The pump along with the stimulator has improved Lee’s condition, but she has not returned fully to work since the date of the accident. As a result of the implantation of the morphine pump, every ninety days, a nurse must remove any remaining medication and refill the pump through an injection. In addition, the battery and pump must be replaced via surgery every four to five years.
¶ 6. Lee filed a complaint in the Warren County Circuit Court against Kmart alleging negligence. A jury found Kmart negligent and awarded Lee $500,000 in damages. Kmart appeals.
DISCUSSION

1. Videotapes of surgical procedures shoum to jury

¶ 7. During the trial, three videotapes were shown to the jury concerning the spinal stimulator and the morphine pump. Kmart alleges that these graphic videotapes of surgical procedures were shown only to inflame the jury.
¶ 8. The first and second videotapes were shown during Lee’s testimony. A small excerpt only was shown from the first video that depicted the spinal stimulator device and its location within the body. During the pretrial motion, the trial judge held that the section of the tape could be shown that was “basically a diagram of where it’s set up on the body and how it goes to a particular area of the body”; the sound could not be played. The excerpt shown from the second video lasted only a few seconds and showed the bulge of the morphine pump under the skin of another patient.
¶ 9. The third videotape was shown during the testimony of Betty Boatner, a nurse who performs the monthly maintenance on the morphine pump and is a representative of the company that manufactures the pump. With a close-up perspective on a patient, that video reveals the process of surgically implanting the pump.
¶ 10. Our only concern is what was actually displayed to the jury. A risk with some of the technology now frequently in use in courtrooms, from something as simple as these videotapes to much more elaborate presentations, is that an adequate record may not easily be made of what was displayed to the jury. Here, the precise excerpts shown to the jury from the longer videotapes have not been separately preserved or identified. A party wishing to object to the admissibility of evidence must make clear that the evidence to which the objection was made can be identified in the record. Cossitt v. Alfa Ins. Corp., 726 So.2d 132, 135 (Miss.1998).
¶ 11. The admissibility of videotapes is within the sound discretion of the trial judge. Jesco, Inc. v. Shannon, 451 *107 So.2d 694, 702 (Miss.1984). The exercise of that discretion must be based on normal evidentiary considerations. As with any evidence, a trial judge should determine whether,its probative value outweighs the prejudicial effect upon a jury. M.R.E. 403. Videotapes likely require previewing the evidence outside the presence of the jury. In addition, videotapes or photographs should be excluded when the only purpose is to inflame the jury. Butler v. Chrestman, 264 So.2d 812, 816 (Miss.1972).
¶ 12. The purpose of these videos, whether such a purpose is relevant, and whether the videos had probative value to satisfy that purpose without undue prejudice, all must be decided initially by the trial court and then, based on an adequate record, by an appellate court if the matter is raised.
¶ 13. The trial judge previewed the tapes. At that time Kmart objected to the videotapes on the grounds that they were inadmissible hearsay and that they were the equivalent of expert testimony. The argument that they were so graphic as to inflame the jury was not made. Thus we will not consider it on appeal. Lemon v. Miss. Transp. Comm’n, 735 So.2d 1013, 1024 (Miss.1999).
¶ 14. Only one of the videotapes is the basis of an appellate objection. It is the one displaying the surgical procedure for implanting the morphine pump. Kmart argues that the doctors’ video deposition testimony played for the jury—separate videotapes for which no appellate objection is made—adequately explained the implantation procedures. In addition, the nurse who was a representative of the morphine pump manufacturer testified in a general way about the implantation and maintenance procedure, but she did not detail the actual surgery.
¶ 15. The central question is whether detailed discussion of the implantation procedure is relevant. If it was not, then the videotape depositions describing it and the nurse’s testimony were all irrelevant on what would be a non-issue. No objection is made on appeal that the entirety of the discussion of the surgery that was needed to implant the morphine pump was inadmissible. Absent that issue, then how thoroughly to explain the procedure and with what aids beyond testimony are matters largely for the discretion of the trial judge. Were the videotape too graphic, introduced for reasons that appeared largely to inflame the jury, then an abuse of discretion on that basis might be shown. But Kmart did not make that objection. The trial judge allowed this videotape to be shown as an aid to the jury to understand the procedures. On this record we find no error.

2. Motion for Judgment notwithstanding the verdict

¶ 16. Kmart asserts that Lee failed to prove that Kmart breached its duty owed to Lee. Therefore the trial court should have entered a judgment notwithstanding the verdict.
¶ 17. Our review of the denial of this motion requires us to examine all of the evidence in a light most favorable to the non-moving party. That leads to making such reasonable inferences from the evidence as would support the verdict. We will reverse only when the facts and inferences are overwhelmingly in favor of the motion, such that reasonable jurors could not have reached the verdict. Patton-Tully Transp. Co. v. Douglas, 761 So.2d 835, 842 (Miss.2000).
¶ 18. A business owner or operator has a duty to keep its premises reasonably safe and to warn of dangerous condition. Even so, the business is not the *108 insurer of the patrons’ safety. J.C. Penney Co. v. Summit, 318 So.2d 829, 832 (Miss.1975). The existence of a duty to Lee is not disputed, nor is Kmart’s knowledge of the dangerous condition. What is in issue is whether Kmart’s actions were reasonable. There is no contrary evidence that the clerk, Sanders, took immediate action to address the problem. What is a jury question is the sufficiency of the action.
¶ 19. One of the employees standing guard testified that her sister came up to show her some flowers. She acknowledged looking at the flowers but insists that she still was observant as customers approached the spill. Additionally, she testified that she shouted a warning to Lee, though by that time Lee had stepped in the antifreeze. Sanders testified that he saw Lee approach the spill and shouted a warning. No barricade was placed around the spill.
¶ 20. Lee testified that as she rounded the corner she saw the three women admiring the flowers. Lee did not look down at the floor and did not see the spill until she had fallen. She testified that she did not hear anyone shout a warning.
¶ 21. The jury had to decide if Kmart, through its employees, failed to exercise reasonable care. Making such inferences as the evidence will justify, the jurors might have found that those who stood by to warn patrons were distracted, unreasonably dropped their vigilance, and allowed Lee to enter the site of the spill.
¶ 22. The evidence supports that Kmart was attempting to address the hazard. A business premises’ owner is not the insurer of safety, but conversely good intentions are not enough. Here, there was evidence on which a jury could rely to find that Kmart should have done more. That was a jury question, and it was answered in Lee’s favor. We find sufficient evidence to support a finding that Kmart breached its duty to warn Lee of the known hazard.

S. Motion for a new trial

 ¶ 23. At least, Kmart argues, the trial court should have granted a new trial. Kmart here is not arguing that the only possible verdict was in its favor, but instead that even though some evidence to support liability existed, the overwhelming weight of the evidence was in its favor. Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996). To grant or deny a motion for a new trial is a matter within the sound discretion of the trial judge. Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954, 960 (Miss.1999). On appeal, a jury’s verdict will not be set aside unless the verdict is so contrary to the overwhelming weight of the evidence and testimony that to allow it to stand would sanction an unconscionable injustice. Herrington v. Spell, 692 So.2d 93, 103 (Miss.1997).
¶ 24. Evidence was presented upon which the jury could rely that Kmart was negligent and that injury to Lee proximately resulted. We do not find such evidence to be dubious, insignificant, or greatly outweighed by contrary evidence as to require the granting of a new trial.

k. Motion for a remittitur

¶ 25. Kmart’s final assignment of error addresses the amount of damages. Lee was awarded $500,000. Kmart argues that this amount is excessive because Lee only proved past and future medical damages in the amount of $230,000. The remaining $270,000 is said to be excessive and speculative.
¶ 26. A motion for remittitur is in the discretion of the trial judge and will not be reversed unless the trial judge *109 abused that discretion. Roussel v. Robbins, 688 So.2d 714, 724 (Miss.1996).
¶ 27. It is the province of the jury to determine the amount of damages. The award will not be set aside unless it is so unreasonable in amount “as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.” Id. We do not find such a situation. Almost half of the award was for medical expenses alone. Expert medical testimony was presented that Lee must learn to live with pain for the rest of her life and endure four to five more surgeries to maintain the morphine pump. Every ninety days, a nurse must insert a needle into the pump through her skin to withdrawal the old medicine and replace it with new medication.
¶ 28. Other damages are reflected in the proof that since the accident she has not returned fully to work, although she has not lost any wages. In order to alleviate her pain, she has had two devices implanted within her body. Lee testified that the pain has decreased since the implantation, but that the more she increases her daily activities in an attempt to return to her normal routine, the more pain she endures. Before the fall, Lee was a hard working, independent woman who was able to take care of many problems at the apartment complex she managed herself. There was evidence that now she is unable to work a full day, climb stairs to show or inspect apartments unless absolutely necessary, or enjoy her domestic life.
1129. We find no error in denying a remittitur.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.