820 So.2d 42 (2002)
Joan W. BRIDGES, Appellant,
v.
John T. KITCHINGS, M.D. and William S. Cook, M.D., Appellees.
No. 2001-CA-00718-COA.
Court of Appeals of Mississippi.
June 11, 2002.
*45 John Robbins, II, Brandon, attorneys for appellant.
James A. Becker, Jr., Mildred M. Morris, Jackson, attorneys for appellees.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
THOMAS, J., for the court.
¶ 1. On March 26, 1999, Joan W. Bridges filed a complaint against Dr. William S. Cook and Dr. John T. Kitchings, claiming that they did not have her informed consent to remove her left ovary. On March 1, 2001, the jury returned a verdict in favor of Dr. Cook and Dr. Kitchings. Aggrieved, Bridges asserts the following issues:
I. THE LOWER COURT ERRED BY ALLOWING THE DEFENDANTS TO CROSS EXAMINE BRIDGES USING MEDICAL RECORDS FROM HER PRIOR PHYSICIANS.
II. THE LOWER COURT ERRED IN FAILING TO APPLY THE REASONABLY PRUDENT PATIENT STANDARD, THE OBJECTIVE STANDARD.
III. THE LOWER COURT ERRED WHEN IT WOULD NOT LET BRIDGES' CALCULATED MEDICAL DAMAGES INTO EVIDENCE.
IV. THE LOWER COURT ERRED WHEN IT ALLOWED THE DEFENSE TO DISCUSS BRIDGES' HEALTH INSURANCE.
V. THE LOWER COURT ERRED WHEN IT LIMITED THE PHOTOGRAPHS BRIDGES WISHED TO ENTER INTO EVIDENCE.
VI. THE LOWER COURT ERRED WHEN IT ALLOWED THE DEFENSE TO INTRODUCE EVIDENCE REGARDING OVARIAN CANCER.
VII. THE LOWER COURT ERRED WHEN IT WOULD NOT PERMIT BRIDGES TO DISCUSS THE ISSUE OF MONEY DAMAGES IN THE SECOND HALF OF HER CLOSING ARGUMENT.
VIII. THE VERDICT OF THE LOWER COURT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
IX. BRIDGES DID NOT RECEIVE A FAIR TRIAL.
Finding no error, we affirm.

FACTS
¶ 2. Bridges had been a patient at Jackson Healthcare for Women, P.A. since the 1970s. Dr. Bass, a doctor working at the clinic, performed a partial hysterectomy in 1978, wherein her right ovary was removed, but her left ovary was left intact.
*46 ¶ 3. Bridges began seeing Dr. Kitchings for annual checkups in 1994. In 1995, she complained of urinary incontinence. She was treated with perineal exercises and was instructed to limit stimulants to the bladder in order to improve the incontinence. The results were not favorable. When Bridges returned for her annual checkup on December 10, 1996, a pelvic examination showed a loss of the urethrovesical angle. Dr. Kitchings called in his partner, Dr. Cook, during the examination in order to get a second opinion. Dr. Cook agreed that there was a loss of the urethrovesical angle.
¶ 4. Dr. Kitchings and Bridges discussed her incontinence and continuing pelvic pain and a urodynamic work up and cystometric studies were scheduled. These studies confirmed the diagnosis. After receiving the results of these studies, Bridges was scheduled for a consultation with Dr. Kitchings on January 27, 1997.
¶ 5. During this consultation, Bridges decided to undergo a bladder suspension surgery. Kitchings testified that during this consultation, he discussed the surgery and the risks of the surgery with Bridges. Also during this consultation, Bridges indicated that her grandmother had suffered from ovarian cancer. Bridges inquired if she could have her left ovary removed during the bladder suspension surgery in order to prevent the possibility of ovarian cancer. Dr. Kitchings testified that he discussed the additional risks of the ovarian removal procedure with Bridges at that time. Bridges decided to proceed with both the bladder suspension surgery as well as the ovary removal at the conclusion of this consultation.
¶ 6. On March 28, 1997, Bridges was admitted to the Woman's Pavilion at River Oaks Hospital. Dr. Kitchings and Dr. Cook performed the bladder suspension surgery and removed her left ovary. Bridges was fifty-seven years old at the time of the surgery. During the removal of the ovary, the ureter on the left side was accidentally severed. This was a known complication of this type of surgery.
¶ 7. Bridges had also scheduled an abdominoplasty, or a "tummy tuck," to be performed by Dr. Songcharoen to take place immediately after the operation in question was complete, yet while she was still under anesthesia. The proposed "tummy tuck" surgery was cancelled due to the complications with the severed ureter.
¶ 8. On March 26, 1999, Bridges filed a complaint against Dr. William S. Cook, Dr. John T. Kitchings and Jackson Healthcare for Women, P.A., claiming that Cook and Kitchings did not have her informed consent to remove her left ovary. Bridges dismissed her claim against Jackson Healthcare for Women before the trial began.
¶ 9. The jury returned a verdict in favor of Dr. Cook and Dr. Kitchings and the trial court denied Bridges' motion for a new trial, or in the alternative, for a JNOV.

ANALYSIS

I. DID THE LOWER COURT ERR BY ALLOWING THE DEFENDANTS TO CROSS EXAMINE BRIDGES USING MEDICAL RECORDS FROM HER PRIOR PHYSICIANS?
¶ 10. Bridges argues that counsel for Dr. Cook and Dr. Kitchings was allowed to refer to unsworn and un-sponsored medical records on several occasions. These records were generated by physicians who treated Bridges prior to the operation in question. These physicians were not called to testify at trial and they were not deposed by either party to the suit. *47 Bridges cites several cases in claiming that such references to these records were a violation of her due process rights of the Fourteenth Amendment of the United States Constitution. Georgia Pacific Corp. v. McLaurin, 370 So.2d 1359, 1361-62 (Miss.1979); see also Jones v. Hatchett, 504 So.2d 198, 202-03 (Miss.1987).
¶ 11. Bridges specifically complains of reference made involving a statement Bridges made to one of her prior physicians "that she used the weed eater on two acres" after her ureter was severed. Bridges also specifically complains of references made involving two facelift operations and a breast augmentation operation that she had performed years prior to the operation in question. Finally, Bridges also specifically complains of references to the "tummy tuck" operation that was scheduled to take place on the same day of the operation in question. As we have stated above, the "tummy tuck" operation was not performed due to the complications involving the severed ureter.
¶ 12. We should first note that Bridges never asserted the physician/patient privilege in regard to the use of any of the statements for which she now complains. We should also note that there were no medical records introduced into evidence other than the consent forms for the operation in question which were signed by Bridges herself.
¶ 13. We will address the three groups of references Bridges complains of separately. First, Bridges complains of references involving a statement Bridges made to one of her prior physicians "that she used the weed eater on two acres" after her ureter was severed. To put this reference into context, during Bridges' direct testimony, she claimed that her life of being active and working in the yard was ended by the operation in question. During cross-examination, Bridges denied that her knee and back were part of the reason that she was no longer active. Bridges was then asked if she recalled a conversation with Dr. Vise in February of 1999, wherein she explained to him that she was unable to stand erect because of pain in her knee and back and that lifting, riding and working in the yard were aggravating factors. When Bridges answered that she did not recall making those statements, she was asked to review a document to refresh her memory. After reviewing this document, she admitted making those statements to Dr. Vise and that she occasionally worked in the yard. Bridges was then asked if she hurt her arm in June of 1999, while working on two acres of her yard with the weed eater. Bridges admitted that she did tell Dr. Vise that she had worked on two acres of her yard with the weed eater, but that she had exaggerated in making that statement. Counsel for Bridges made no objection to the statements involving the weed eater.
¶ 14. Failure to make a contemporaneous objection waives the right of raising the issue on appeal. Ballenger v. State, 667 So.2d 1242, 1259 (Miss.1995). The statements made by counsel for Dr. Cook and Dr. Kitchings were used to refresh Bridges' memory, which is consistent with Mississippi case law. Herrington v. Spell, 692 So.2d 93, 102 (Miss.1997). Further, statements involving the weed eater fall under the MRE 803(4) hearsay exception, where statements made for the purpose of medical diagnosis and made under circumstances indicating trustworthiness are allowed. Griffith v. State, 584 So.2d 383, 386 (Miss.1991). These statements fall under this exception.
¶ 15. Next, we have the references made involving two facelift operations and a breast augmentation operation that Bridges received prior to the operation in *48 question. Bridges argues that these references were irrelevant and more prejudicial than probative. Bridges also asserts that "[t]he evidence from these medical records and regarding these plastic surgeries was hearsay and should not have been admitted, and its admission violated the Plaintiff's due process rights."
¶ 16. Bridges points out only two objections to the references involving the facelifts and breast augmentation that were overruled. Both occurred during Bridges' cross-examination when counsel for Dr. Kitchings and Dr. Cook asked Bridges about consenting to voluntary and unnecessary surgeries performed prior to the operation in question. The court held that the information was relevant and statements made by Bridges as to her state of mind at the time that she elected for these surgeries and consented to them were not hearsay. We agree that this information was relevant. We also agree that the MRE 803(1) hearsay exception, where "a statement of the declarant's then existing state of mind" applied to statements made by Bridges.
¶ 17. As for the "tummy tuck" references made, this operation was scheduled to take place at the same time as the rest of the operation in question. The references made during trial to the "tummy tuck" were all made in relation to Bridges' consent to the surgery. Therefore, the references to the "tummy tuck" portion of the operation were more probative than prejudicial. "The relevancy and admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Peterson v. State, 671 So.2d 647, 658 (Miss.1996). The trial court did not abuse its discretion by allowing references to the "tummy tuck" operation.

II. DID THE LOWER COURT ERR IN FAILING TO APPLY THE REASONABLY PRUDENT PATIENT STANDARD, THE OBJECTIVE STANDARD?
¶ 18. Bridges argues that a subjective standard was errantly applied to the case at trial. This subjective standard, plainly stated, was whether Bridges would have consented to the surgery to remove her ovary had she been reasonably informed. Bridges asserts that an objective standard, or whether a reasonably prudent patient would have consented to the surgery had they been reasonably informed, should have been applied instead.
¶ 19. It is true that Mississippi follows the reasonably prudent patient standard. Reikes v. Martin, 471 So.2d 385 (Miss.1985). However, the record reflects that the court submitted to the jury Bridges' own instructions on this issue. A party cannot complain of a jury instruction granted at its own request. Musselwhite v. State, 212 Miss. 526, 54 So.2d 911, 915 (1951). Therefore, this issue is without merit.

III. DID THE LOWER COURT ERR WHEN IT WOULD NOT LET BRIDGES' CALCULATED MEDICAL DAMAGES INTO EVIDENCE?
¶ 20. Bridges argues that the calculator tape, a monetary tally of the costs of her medical treatment as a result of the operation in question that Bridges produced herself, should have been admitted into evidence. Bridges argues that the original documentation of her medical expenses were not entered into evidence because the documents mentioned insurance. Bridges argues that the calculator tape was relevant pursuant to MRE 401 and 402. The trial court did allow Bridges to testify as to the amount of medical costs as a result of the operation in question.
*49 ¶ 21. Bridges cites Moody v. RPM Pizza, Inc., 659 So.2d 877, 885-86 (Miss.1995), as authority supporting the ability to enter a medical bill into evidence. In Moody, our supreme court held that it was reversible error for the trial court to refuse to allow an actual medical bill to be entered into evidence. Id. The document in question, a calculator tape, is not an actual medical bill. Rather, the calculator tape was a document that Bridges produced herself. Therefore, Moody does not apply to the case at hand.
¶ 22. We should also note that Bridges never moved to admit the tape during the trial. There is no indication that the calculator tape was produced until it was attached to a motion for a new trial subsequent to the trial. When testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal. Gates v. State, 484 So.2d 1002, 1008 (Miss.1986). Therefore, the admission of the calculator tape cannot be considered on appeal.

IV. DID THE LOWER COURT ERR WHEN IT ALLOWED THE DEFENSE TO DISCUSS BRIDGES' HEALTH INSURANCE?
¶ 23. Bridges asserts that her motion in limine for the court to direct the defendants to abstain from making any mention of insurance should have been granted. Bridges cites McCollum v. Franklin, 608 So.2d 692, 695 (Miss.1992), as authority supporting this assertion of error.
¶ 24. The lower court denied the motion, finding that the fact that Bridges' COBRA medical insurance was due to expire several months after the operation in question supported testimony that Bridges desired to have the operation to remove her left ovary before this insurance policy expired. The jury was instructed that "[y]ou may not reduce the amount of damages awarded, if any, merely because the Plaintiff, Mrs. Bridges, may have had medical and hospitalization insurance coverage."
¶ 25. "The relevancy and admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Peterson, 671 So.2d at 658. We also agree with the lower court that testimony involving Bridges' COBRA health insurance was more probative than prejudicial. This is due to the fact that Bridges had motive to undergo the operation in question before this insurance policy ran out.

V. DID THE LOWER COURT ERR WHEN IT LIMITED THE PHOTOGRAPHS BRIDGES WISHED TO ENTER INTO EVIDENCE?
¶ 26. Bridges complains that only one of two photographs "depicting her condition at the height of her malaise" caused by the operation in question was admitted and she suffered prejudice as a result.
¶ 27. While Bridges makes quick mention of MRE 401, she cites no real authority to support this assertion of error. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams v. State, 708 So.2d 1358, 1362-63 (Miss.1998); Grey v. Grey, 638 So.2d 488, 491 (Miss.1994); McClain v. State, 625 So.2d 774, 781 (Miss. 1993); Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992).
¶ 28. The second photograph, which was not entered into evidence, was not identified or marked in any way. We have held that a party wishing to object to the admissibility of evidence must make clear that the evidence can be identified in the record. Kmart Corp. v. Lee, 789 So.2d 103, 107 (Miss.Ct.App.2001).
*50 ¶ 29. The record does reflect, however, that the two photographs in question were almost identical. Therefore, as we are limited to a review of the record, we can only agree with the trial court that the admission of both photographs would have been cumulative.

VI. DID THE LOWER COURT ERR WHEN IT ALLOWED THE DEFENSE TO INTRODUCE EVIDENCE REGARDING OVARIAN CANCER?
¶ 30. Bridges made a motion in limine that Dr. Cook and Dr. Kitchings should be instructed "to refrain from reciting a litany of the horrors of ovarian cancer, other than making one brief mention of ovarian cancer when reciting the reasons which a patient should consider in deciding whether or not to have an ovary removed." The court denied this motion. Bridges now complains that Dr. Cook and Dr. Kitchings not only called Dr. Boronow, a cancer specialist, as an expert witness, they concentrated on the threat of cancer throughout trial.
¶ 31. While Bridges makes quick mention of MRE 401 and 403, she cites no real authority to support this assertion of error. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams, 708 So.2d at 1362-63; Grey, 638 So.2d at 491; McClain, 625 So.2d at 781; Smith, 599 So.2d at 532.
¶ 32. The record is clear in that Bridges desired to have her remaining ovary removed for two reasons, namely, her health insurance was about to run out, and she was concerned that she might have ovarian cancer in the future based on the fact that she had a family history of ovarian cancer. Dr. Boronow's testimony was, in sum, that ovarian cancer was very dangerous and the risk of developing ovarian cancer was significantly greater if a close relative suffered from it. Dr. Boronow also testified that there is no way to detect ovarian cancer until it is in an advanced state. This testimony was proffered in order to show that Bridges' decision to have her remaining ovary removed was a reasonable one.
¶ 33. "The relevancy and admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Peterson, 671 So.2d at 658. We agree with the lower court that this testimony was relevant and it did not prejudice Bridges.

VII. DID THE LOWER COURT ERR WHEN IT WOULD NOT PERMIT BRIDGES TO DISCUSS THE ISSUE OF MONEY DAMAGES IN THE SECOND HALF OF HER CLOSING ARGUMENT?
¶ 34. Bridges complains that during the second half of closing argument, the lower court sustained an objection to any mention of damages incurred by Bridges as a result of the operation in question. In the record, the lower court explained that this objection was sustained due to the fact that damages were not mentioned during Bridges' first half of closing argument, and the court agreed with Dr. Cook and Dr. Kitchings that the second half of closing argument was reserved for rebuttal. Bridges claims that damages were mentioned during the first half of closing argument as well as during the closing argument by counsel for Dr. Cook and Dr. Kitchings, therefore, the objection should have been overruled.
¶ 35. Bridges cites no authority to support this assertion of error. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Williams, 708 So.2d at 1362-63; *51 Grey, 638 So.2d at 491; McClain, 625 So.2d at 781; Smith, 599 So.2d at 532.
¶ 36. The party with the burden of proof is allowed to open closing arguments, followed by a response by the opposing party, and, finally, followed by a rebuttal by the party with the burden of proof. City of Jackson v. McCardle's Estate, 189 Miss. 781, 198 So. 736, 736 (1940). The record reflects that damages were not mentioned during the first half of closing argument by counsel for Bridges nor were they mentioned during the closing argument by counsel for Dr. Cook and Dr. Kitchings. In order to rebut the issue of damages, counsel for Bridges should have raised this issue when he was allowed to open closing arguments. By failing to do so, Bridges forfeited the right to complain on appeal.

VIII. WAS THE VERDICT OF THE LOWER COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 37. In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the lower court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Herrington v. Spell, 692 So.2d 93, 103 (Miss. 1997). It is well established that a jury verdict in a civil case will not be disturbed on appeal unless the verdict was against the overwhelming weight of the evidence and credible testimony or if the jury has been confused by errant instructions by the lower court, or if the jury's verdict is a result of bias, passion, and prejudice. Southwest Miss. Regional Med. Ctr. v. Lawrence, et al., 684 So.2d 1257, 1267 (Miss.1996); Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989). Further, since the jury verdict favored Dr. Cook and Dr. Kitchings in the case at hand, in our review all evidentiary conflicts are resolved in their favor, all reasonable inferences which flow from the testimony are viewed in their favor, and we must assume that the jury drew all permissible inferences from the evidence offered in favor of Dr. Cook and Dr. Kitchings. Burnham v. Tabb, 508 So.2d 1072, 1077 (Miss.1987); City of Jackson v. Locklar, 431 So.2d 475, 477 (Miss. 1983). The evidence in the case at hand supports the verdict of the lower court.

IX. DID BRIDGES RECEIVE A FAIR TRIAL?
¶ 38. Bridges asserts that the cumulative effect of the above listed errors prevented her from receiving a fair trial. This assertion of error is moot due to the fact that we find no error above. Carlton v. Mississippi Transp. Com'n, 749 So.2d 170, 179 (Miss.Ct.App.1999).
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. BRIDGES, J., NOT PARTICIPATING.