967 So.2d 77 (2007)
Anthony DANIELS, M.D., Appellant,
v.
Emma C. BAINS, Appellee.
No. 2006-CA-01608-COA.
Court of Appeals of Mississippi.
October 23, 2007.
*78 Marty Craig Robertson, Alicia Clifton Baladi, attorneys for appellant.
Jackye C. Bertucci, attorney for appellee.
Before MYERS, P.J., BARNES, and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. Emma Bains sued Anthony Daniels, M.D. and sought to have Daniels declared the father of her daughter. A paternity test confirmed as much, and the county court ordered Daniels to pay child support, any of the child's medical bills beyond that covered by insurance, the child's college expenses, Bains's attorney's fees, and to maintain a life insurance policy on himself for the child. In some instances, the county court held that Daniels's obligations extended beyond the child's age of majority. Aggrieved, Daniels appeals and raises the following issues, verbatim:
I. WHETHER THE COUNTY COURT ERRED IN GRANTING VARIOUS FORMS OF CHILD SUPPORT WELL BEYOND THE CHILD'S STATUTORY AGE OF MAJORITY.
II. WHETHER THE COUNTY COURT ERRED IN GRANTING ATTORNEY FEES.
III. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO PAY ONE-HUNDRED PERCENT OF HEALTH COVERAGE, INCLUDING DEDUCTIBLES AND OUT OF POCKET EXPENSES.
IV. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO CARRY A $500,000 LIFE INSURANCE POLICY FOR THE CHILD.
V. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO PAY THE CHILD'S COLLEGE EXPENSES BEFORE REQUIRED PREREQUISITES HAVE BEEN MET.
We find that the county court erred when it ordered Daniels to pay child support payments and other forms of support beyond the point that the child reaches the age of majority. As such, we reverse that portion of the county court's decision. However, as to all other issues, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On November 30, 2004, Emma Bains gave birth to a daughter, Lillian. Bains filed a complaint against Anthony Daniels, M.D., for declaration of paternity, child support, and other relief in the County Court of Jackson County.[1] Pursuant to an *79 agreed order, the parties submitted to genetic testing. That genetic testing indicated a 99.99% probability that Daniels was Lillian's biological father.
¶ 3. On February 14, 2005, Bains filed a motion for order of filiation, temporary support, and costs. Bains requested (1) that Daniels be declared Lillian's father, (2) reimbursement of her out-of-pocket medical expenses associated with delivery, (3) temporary child support, (4) attorney's fees, and (5) other costs. Daniels agreed to pay Bains $700 per month in temporary child support payments. The remaining issues went before the county court for a hearing on April 7, 2005. As a result of that hearing, the county court found Daniels to be Lillian's father, ordered Daniels to pay Bains $800 per month in temporary child support, and ordered Daniels to reimburse Bains for her out-of-pocket medical expenses related to her pregnancy. The county court reserved ruling on the remaining issues until after the final hearing on the matter.
¶ 4. On January 5, 2006, the county court conducted that final hearing. Approximately four months later, the county court issued its findings of fact and conclusions of law. The county court ordered Daniels to (1) pay Bains $1,200 per month in child support, (2) add Lillian as a dependent on his health insurance policy or pay Bains $100 per month for health insurance premiums, (3) pay any and all deductibles and uncovered medical and dental expenses for Lillian, (4) obtain and maintain a $500,000 term life insurance policy on himself for the benefit of Lillian, (5) pay all costs of tuition and housing at a four-year in-state institution of higher learning for Lillian and one-half of the costs of graduate school, conditional upon Lillian's grades, and (6) pay Bains's attorney's fees. Aggrieved by portions of the county court's decision, Daniels appeals.

STANDARD OF REVIEW
¶ 5. The county court judge sat essentially as a chancellor in this case. We will not disturb a chancellor's findings of fact unless they are not supported by substantial evidence. Pacheco v. Pacheco, 770 So.2d 1007, 1009(¶ 8) (Miss.Ct.App.2000). Additionally, we will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous. Vaughn v. Vaughn, 798 So.2d 431, 433(¶ 9) (Miss. 2001). We review questions of law de novo. Ladner v. Necaise, 771 So.2d 353, 355(¶ 3) (Miss.2000).

ANALYSIS
I. WHETHER THE COUNTY COURT ERRED IN GRANTING VARIOUS FORMS OF CHILD SUPPORT WELL BEYOND THE CHILD'S STATUTORY AGE OF MAJORITY.
¶ 6. Daniels takes issue with two particular provisions of the county court's decision: his obligation to maintain a life insurance policy and his obligation to pay for certain educational expenses. In particular, Daniels draws our attention to the fact that those obligations may continue after the child reaches the age of majority. Daniels claims the county court committed reversible error. Bains concedes that the county court erred. Likewise, we agree.
¶ 7. The county court found that Daniels was to maintain life insurance on himself with Lillian as the beneficiary "until the minor child reaches the age of twenty-one, or as long as the minor remains a full-time student, whichever date is later, but in no event after the minor child reaches the age of twenty-five." As for Lillian's college expenses, the county court ordered Daniels *80 to pay the cost of tuition and housing at an in-state four-year institution of higher learning and, should Lillian pursue a graduate degree, the county court obligated Daniels to pay one-half of those costs as long as Lillian maintains at least a B average. The county court did not make Daniels's obligation to pay college expenses conditional upon Lillian's age. As the court's order reads, Daniels's college expense obligation could continue after Lillian becomes twenty-one years old.
¶ 8. Section 93-11-65(8) of the Mississippi Code Annotated (Rev.2004) provides:
The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
(a) Attains the age of twenty-one (21) years, or
(b) Marries, or
(c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
(d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.
¶ 9. We find the county court erred when it obligated Daniels beyond the point at which Lillian becomes emancipated. However, we do not disturb any other portion of the county court's findings of fact and conclusions of law. To be entirely clear, all findings of fact and conclusions of law will remain in effect as rendered, aside from the fact that they may not continue beyond the point at which Lillian becomes emancipated.
II. WHETHER THE COUNTY COURT ERRED IN GRANTING ATTORNEY FEES.
¶ 10. During the January of 2005 hearing, the county court addressed the question of whether Daniels would be responsible for Bains's attorney's fees. According to the county court, "Normally what I do on these attorney's fees is, I'll let her submit her affidavit for attorney's fees and then give you some time to file any objections that you have to that and decide that at a later time as to how much." Counsel for Daniels responded:
I wouldn't object that [counsel for Bains] is fairly and accurately reporting her attorney's fees. I certain[ly] believe that she is.
Now, whether or not my client could be responsible for all of those, we certainly take issue with, but no I  [counsel for Bains] is in good standing and a fine attorney. I'm sure she's accurately reporting expenses.
Later, Daniels's attorney stated:
As far as the court cost, Your Honor, we would just hope that when the Court  and again, [counsel for Bains] is a fine lawyer. She's done a fine job for her client, but there's nothing extraordinary about this case. It's fairly straight forward. There was been, [sic] you know, as in every case there's some level of extra cooperation it takes to make sure discovery and things like that are taken care. I would just hope that the Court would carefully take a look at the affidavit of my fine counsel opposite and just take a look at the line item and just consider, you know, the issues involved and whether or not the fee is reasonable. I think she's correct that there is, you know, the putative father and now the proved biological father is responsible and required to pay a certain level of attorney's fees.

*81 But, you know, usually in the cases I've been involved with, you know, you're not talking about the level of litigation that this case has involved. I mean, you're talking about $750, $1,000 and the expenses. Although, I certainly believe she did the work, the Court would have to consider whether or not $7,500 is a reason[able] expense when it comes to a fairly ordinary paternity filiation action.
Counsel for Bains responded:
As far as my fee, it is directly related to the amount of time that has been required in this case. My bills are very clear. I'm sure there are plenty of phone calls and e-mails between myself and [counsel for Daniels] that did not even make it on to the bill. The reason that this bill is the amount it is largely due to the lack of cooperation from Dr. Daniels, having to force the issue of everything that he has been required to do, late payments required phone calls from my client to me, me to [counsel for Daniels]. This occurred on numerous occasions that the payments would not be on time. And so I would just say to the Court that the bill I've submitted is directly related to the time that's been required largely due to Dr. Daniels's lack of cooperation.
At that point, the county court allowed counsel for Bains to submit into evidence an itemized bill and affidavits from other attorneys who swore that Bains's attorney's fees were reasonable.
¶ 11. When the county court issued its findings of fact and conclusions of law, the county court awarded Bains $7,517.18 in attorney's fees. In so doing, the county court stated, "Plaintiff's counsel has submitted an invoice for services related to this matter in the amount of $7,517.18. Defendant's counsel has filed no objection."
¶ 12. On appeal, Daniels claims the county court erred because it did not conduct an analysis of certain factors on the record. Daniels references the factors discussed in McKee v. McKee, 418 So.2d 764 (Miss.1982). The McKee factors are:
(1) the relative financial ability of the parties, (2) the skill and standing of the attorney employed, (3) the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, (4) the time and labor required, (5) the usual and customary charge in the community, and (6) the preclusion of other employment by the attorney due to the acceptance of the case.
Ellzey v. White, 922 So.2d 40, 42(¶ 6) (Miss.Ct.App.2006).
¶ 13. Daniels raises this argument for the first time on appeal. Failure to raise an issue in a trial court causes the operation of a procedural bar on appeal. Birrages v. Ill. Cent. R.R., 950 So.2d 188, 194(¶ 18) (Miss.Ct.App.2006). Though we are not obligated to further discuss this issue, we will do so to attempt to resolve what appears to be a potential conflict in precedent.
¶ 14. According to Mississippi Code Annotated § 93-9-45 (Rev.2004), "If the court makes an order of filiation, declaring paternity and for the support and maintenance, and education of the child, court costs, including the cost of the legal services of the attorney representing the petitioner . . . and other costs shall be taxed against the defendant." In that respect, the McKee factors do not appear to be an issue. However, there is precedent to support Daniels's position.
¶ 15. In Ellzey, a paternity case, this Court reversed a chancellor's decision to award attorney's fees because the chancellor *82 "failed to make a finding that [the mother] was unable to pay her attorney's fees, a factor necessary in making such an award." 922 So.2d at 42(¶ 6). Accordingly, this Court remanded the matter so the chancellor could "make specific findings." Id. Section 93-9-45 was not mentioned in Ellzey. Instead, Ellzey relied on two divorce cases: Johnson v. Johnson, 650 So.2d 1281 (Miss.1994) and McKee v. McKee, 418 So.2d 764 (Miss.1982). Neither Johnson nor McKee were paternity cases and Section 93-9-45 and its seemingly automatic provision was not a factor in either case. In any event, assuming this issue was not procedurally barred, Ellzey suggests that we should remand this matter for specific findings regarding the McKee factors.
¶ 16. Approximately three months after this Court's decision in Ellzey, the Mississippi Supreme Court considered whether a chancellor correctly awarded attorney's fees incident to a paternity action in Dobbins v. Coleman, 930 So.2d 1246 (Miss. 2006). The father in Dobbins relied on McKee and argued that the chancellor unreasonably ordered him to pay the mother's attorney's fees. The Dobbins court held that the father's reliance on McKee was "misplaced" and stated that, "While the awarding of attorney's fees and costs appears automatic pursuant to the statute, we have held that those fees must be reasonable." Id. at 1251(¶ 25) (citing R.E. v. C.E.W., 752 So.2d 1019, 1028 (Miss. 1999)). Dobbins did not overrule Ellzey, but the two cases are in conflict. To the extent that this case and Dobbins conflict with our prior Ellzey decision, Ellzey is overruled.
¶ 17. Were this issue properly preserved for appellate review, we would follow Dobbins. As in Dobbins, Daniels's reliance on McKee is misplaced. In the context of a paternity action, where it has been demonstrated that a man is the biological father of a child, and a trial court orders the father to pay the mother's attorney's fees, the only qualifier incident to that award is that the attorney's fees must be reasonable. See Dobbins, 930 So.2d at 1251(¶ 25) ("While the awarding of attorney's fees and costs appears automatic pursuant to the statute, we have held that those fees must be reasonable.") However, as mentioned, Daniels never argued that Bains's attorney's fees were unreasonable. Accordingly, we cannot find that the circuit court erred.
III. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO PAY ONE-HUNDRED PERCENT OF HEALTH COVERAGE, INCLUDING DEDUCTIBLES AND OUT OF POCKET EXPENSES.
¶ 18. Daniels claims the county court erred when it ordered him to "be responsible for paying all deductibles and uncovered medical and dental expenses for the minor child." According to Daniels, requiring him to pay all medical and dental expenses for Lillian is an abuse of discretion when analyzed in the totality of support required by the county court. Daniels submits that he and Bains should share medical expenses equally, because that will ensure that medical decisions will be made honestly and responsibly.
¶ 19. We cannot find that the county court erred. Pursuant to Mississippi Code Annotated § 93-11-65(2), "where the proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children in proportion to the relative financial ability of each." The evidence indicated that Daniels had a monthly income roughly ten times that of Bains. Further, it is not *83 inherently erroneous to order one parent to pay all medical expenses not covered by health insurance. See, e.g., Wilkerson v. Wilkerson, 955 So.2d 903, 911(¶ 25) (Miss. Ct.App.2007). Additionally, there is no reason to assume, as Daniels fears, that the child's medical decisions will be made dishonestly or irresponsibly because there is no evidence that any single medical decision has ever been made as such. Under the circumstances, we find no merit to Daniels's assertion.
IV. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO CARRY A $500,000 LIFE INSURANCE POLICY FOR THE CHILD.
¶ 20. The county court required Daniels to maintain a $500,000 life insurance policy with Lillian as the beneficiary. Daniels submits that the county court committed reversible error. According to Daniels:
While a court's ordering life insurance as part of child support is acceptable, how much is excessive? In addition to the amount of life insurance at issue, should any have been ordered at all if no evidence was given at trial regarding life insurance? The mother did not ask for [Daniels] to maintain a policy for the child's benefit. No evidence was given at trial. The county court could not have given findings of fact and conclusions of law on the issues of life insurance because no testimony was presented at trial regarding that issue. Life insurance should not be ordered based solely on the pleadings.
Daniels also submits:
The county court erred in ordering [Daniels] to purchase a $500,000 life insurance policy with Lillian as the beneficiary. This puts Lillian in the unfortunate position of being better off financially if her biological father dies. Currently [Daniels] is required to pay $1,200 per month in child support. Lillian was born on November 30, 2004. As of November 30, 2006, Tony should be required to pay child support for at most nineteen more years, until Lillian turns twenty-one years of age or is emancipated. Twelve hundred dollars a month equals $14,400 annually that Tony pays in child support. When multiplied by the nineteen years left in support requirements, Tony will be paying $273,600 in support. While this analysis admittedly does not take into consideration other types of support, should Tony become deceased before Lillian becomes twenty-one, with the current life insurance order in place, she will be much better off financially than if Tony lives a full life. Under such circumstances, she would also be entitled to social security death benefits. This outcome is impermissible in this court of equity. The initial amount of $500,000 is excessive and should be decreasing as the child advances in age. A $250,000 decreasing term policy for Lillian's benefit is more equitable.
¶ 21. Daniels's attempt to quantify a father's support is unpersuasive. First and foremost, Daniels's argument is barred for lack of relevant authority. Daniels did include the following statement, "Parents may be ordered to pay additional amounts over and above child support for additional expenses such as `health insurance, out-of-pocket medical and other health-related expenses, life insurance, and expenses of a college education.'" Deborah H. Bell, Miss. Family Law § 10.07 (1st ed.2005) (quoting Nichols v. Tedder, 547 So.2d 766, 769 (Miss.1989)). This language does not support his argument that the county court erred when it *84 ordered him to maintain a life insurance policy. Beyond that, Daniels cites no authority to support his argument. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." Bridges v. Kitchings, 820 So.2d 42, 49(¶ 27) (Miss.Ct.App.2002).
¶ 22. Further, as Daniels notes, a father's support is not fully appreciable in a simple financial cost-benefit analysis. Under ideal circumstances, a father's financial support is important, but a father's overall support transcends mere financial support. It is difficult, if not impossible, to quantify the guidance, security, influence, stability, and love that only a father can provide. Besides his attempt at quantifying that support, Daniels does not claim that the county court acted inequitably when it ordered him to maintain a life insurance policy with a $500,000 benefit. It bears mentioning that Daniels maintains a life insurance policy in the names of his two children from a previous marriage. The death benefit incident to that policy is $1,000,000. Accordingly, each of his two children from a prior marriage would receive $500,000 in the event that Daniels died. Viewed in that light, the county court's order is equitable and is in no way an abuse of discretion.
V. WHETHER THE COUNTY COURT ERRED IN ORDERING TONY TO PAY THE CHILD'S COLLEGE EXPENSES BEFORE REQUIRED PREREQUISITES HAVE BEEN MET.
¶ 23. The county court ordered Daniels to pay for all of Lillian's college expenses. Daniels claims the county court erred. To be entirely clear, Daniels does not claim that he lacks the financial ability to send Lillian to college. According to Daniels, the county court's order was premature because "We do not know the proof and circumstances of this case, and will not know the child's aptitude for college, the mother's ability to help pay for college, nor the relationship between Tony and the child, and will need to reserve these issues for a future hearing. A college education must be earned."
¶ 24. "A chancery court may adjudge that one or both parents provide the means for a college education for their children." Baier v. Baier, 897 So.2d 202, 205(¶ 16) (Miss.Ct.App.2005) (citing Pass v. Pass, 238 Miss. 449, 458, 118 So.2d 769, 773 (1960)). "When the father's financial ability is ample to provide a college education and the child shows an aptitude for such, the court may in its discretion, after hearing, require the father to provide such education." Id. "The parental duty to send a child to college is not absolute, however, but is dependent upon the proof and the circumstances of each case." Id. (citing Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980)).
¶ 25. In Harmon v. Yarbrough, 767 So.2d 1069, 1071(¶ 6) (Miss.Ct.App.2000), this Court addressed a somewhat similar issue. In reaching its decision, the Harmon court noted that, according to the Mississippi Supreme Court, it is improper to impose an obligation to pay college expenses on a parent in a divorce proceeding until the following showing is made:
The duty of a father to send a child to college, under the circumstances of this case, is not absolute. It is dependent, not only on the child's aptitude and qualifications for college, but on whether the child's behavior toward, and relationship with the father, makes the child worthy of the additional effort and financial burden that will be placed on him. Sending children to college is expensive and can cause much sacrifice on the part of parents. It cannot ordinarily be demanded, but must be earned by children through *85 respect for their parents, love, affection and appreciation of parental efforts, none of which are present in this instance.
Id. (quoting Hambrick, 382 So.2d at 477).
¶ 26. The Harmon court then found that "Since the duty is dependent upon several factors, including the child's suitability for college and his or her relationship with the supporting parent at the time of the expenditures, it would normally be improper to impose that obligation when the child is only three years old." Id.
¶ 27. Here, however, we are not dealing with a divorce case. In the context of a paternity action, a child may or may not have a prior relationship with his or her father. Placing a condition based upon the child's behavior towards his or her biological father is unwarranted because the biological father may not have any interaction with the child at all. The child does not bear the sole responsibility for the relationship or the lack of a relationship with his or her father. It is noteworthy that Daniels did not request any visitation with Lillian. In that sense, we cannot find that the county court erred.
¶ 28. We further note that Daniels claims Lillian may not have the aptitude for college. According to Daniels, he should not be ordered to provide for a college education until Lillian displays an aptitude for college. While it may be premature to say that Lillian has an aptitude for college, it is likewise premature to say that she does not. In the event that Lillian does not attend college due to a lack of aptitude, Daniels will in no way have to pay for such expenses. As such, we cannot find that the county court abused its discretion.
¶ 29. THE JUDGMENT OF THE COUNTY COURT OF JACKSON COUNTY IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] "The county court, the circuit court, or the chancery court has jurisdiction of an action under Sections 93-9-1 through 93-9-49. . . ." Miss.Code Ann. 93-9-15 (Rev.2004).