749 So.2d 170 (1999)
Frank CARLTON, Executor of the Estate of Mary W. Caillouet, Deceased; Frances C. Carlton; Martha C. Decareaux And Rickey Deangelo, Appellants,
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 98-CA-00324-COA.
Court of Appeals of Mississippi.
July 20, 1999.
*171 Nathan P. Adams, Jr., Paul Mathis, Jr., Greenville, Attorneys for Appellants.
James T. Metz, Greenwood, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
LEE, J., for the Court:
¶ 1. This case involves the taking of property located in Greenville, Mississippi by the Mississippi Department of Transportation *172 through the process of eminent domain. A trial was held in the Special Court of Eminent Domain of Washington County, and the jury returned a verdict in the sum of $55,000 in damages as compensation for the taking in favor of defendants Frank Carlton, executor of the Estate of Mary W. Caillouet, deceased: Frances C. Carlton, owner: Martha C. Decareaux, owner: Rickey DeAngelo, claimant/lessee: Junior Food Strores, Inc., f/k/a DeWeese Enterprises, d/b/a Super Stop, claimant/lessee, as owners and tenants. Feeling aggrieved by this judgment the appellants have appealed. Finding the appellants' arguments to be without merit, we affirm.

FACTS
¶ 2. The property which was subject to the taking by the Mississippi Transportation Commission is located at the corner of U.S. Highway 82 and Colorado Street in Greenville, Mississippi. The Mississippi Transportation Commission explained that it was necessary to take 7/100 of an acre for improvements to the intersection. The Commission was taking the aforementioned property to straighten the intersection and add a turn lane.
¶ 3. In 1996, an employee with the Mississippi Transportation Commission notified Rickey DeAngelo, the owner of Chillie's liquor store, of its intention to take portions of the property located on U.S. Highway 82 and Colorado Street which surrounded this area. DeAngelo, in turn, notified Frank Carlton, executor of the Estate of Mary Cauillouet of the Commission's intention to take a portion of the property. At the time of the taking, Chillie's liquor store and an abandoned building which formerly contained a convenience store were located on the property.
¶ 4. The ultimate taking resulted in the condemnation of property close into proximity to Chillie's liquor store. As a result, the Commission bought the building in which the liquor store was located. Prior to filing the eminent domain action, an appraiser for the Commission offered Frank Carlton a sum of money as just compensation for the taking of the property. Frank Carlton on behalf of the heirs of the estate of Mary W. Caillouet declined this offer and made a counter-offer. No further negotiations were made between the Commission and Carlton relative to compensation for the taking.
¶ 5. On April 21, 1997, the Mississippi Transportation Commission filed a complaint for a Special Court of Eminent Domain against Frank Carlton, executor of the Estate of Mary W. Caillouet, Deceased: Frances C. Carlton, owner; Martha C. Decareaux, owner; Rickey DeAngelo, claimant-lessee; Junior Food Stores, Inc., f/k/a DeWeese Enterprise, d/b/a Super Stop, claimant-lessee, hereinafter referred to as Carlton. A motion to dismiss the eminent domain action was filed by Carlton. In addition, the State filed a motion for the trial court to appoint an appraiser. On June 20, 1997, a hearing was held relative to both motions which resulted in the trial court appointing an appraiser and denying the Carlton's motion to dismiss.
¶ 6. On June 27, 1997, the Mississippi Transportation Commission filed a statement of values showing that (1) the fair market value of the property to be condemned was $20,450 and (2) damage to the remainder was $17,700 or a total of $38,150. The elements of damage were said to be severance and that the highest and best use of the land was C-4 commercial. On September 22, 1997, Appellant Carlton filed a statement of values in which the fair market value of the property was claimed as $22,869, damage to the remainder of $124,131, total $147,000. The elements of claimed damage were for severance, cost to cure the damage caused by the taking, depreciated cost of pavement (taking area), contributory value of buildings and cost of demolition of buildings, less salvage value. The highest and best use of the property was claimed as C-4, general commercial value. On September 24, 1997, *173 Appellant Carlton, filed a supplemental statement which showed that in addition to the statement of values previously filed, additional damages, based on net present value of the property to be condemned, as of the date of the filing of the petition were $44,000 and damage to the remainder and total compensation was $248,300. The highest and best use remained C-4 commercial value and the elements of damage were for severance, cost to cure, depreciated cost of pavement, contributory value of buildings and cost of demolition of buildings, less salvage value.
After trial the jury returned a verdict of $55,000.

ISSUES

I. WHETHER THE MISSISSIPPI TRANSPORTATION COMMISSION APPRAISER USED A PROPER COMPARABLE AS A FACTOR IN DETERMINING THE BEFORE AND AFTER VALUE OF THE PROPERTY TAKEN BY THE MISSISSIPPI TRANSPORTATION COMMISSION.
¶ 7. As their first assignment of error, Carlton argues that the trial judge erred when he denied the motion to exclude the testimony of the appraiser for the Mississippi Transportation Commission because the sales relied on were not comparable to the taking of the parking area from a corner lot. Carlton and the Commission concede that the determination of the admissibility of expert testimony is committed to the sound discretion of the trial judge. Mississippi State Highway Comm'n v. Terry, 288 So.2d 465, 466 (Miss.1974). However, Carlton goes on to argue that the trial judge applied an incorrect legal standard and argues that "where the court has exercised its discretionary authority against a substantial misperception of the correct legal standards, our customary deference to the trial court is pretermitted, for the error has become one of law." Mississippi Transportation Comm'n v. National Bank of Commerce, 708 So.2d 1, 3 (Miss.1997) (citations omitted). After reviewing the record, we do not find that there was an incorrect legal standard applied.
¶ 8. The appraiser for the Mississippi Transportation Commission gave testimony relative to the value of the subject property by giving a before and after value. In arriving at a before value the appraiser used the comparable sales approach to assist him in deriving a value to the property. The appraiser used three tracts of land located in Greenville as comparables to reach just compensation for the property. The appraiser chose the most expensive property to reach the final value of seven dollars a square foot to value the subject property. Indeed, the very property that Carlton now argues was not comparable was also identified by Carlton as a comparable used to value the property in his answers to interrogatories, and a copy of the land sale was attached as an exhibit to the interrogatories. Testimony from the appraiser for the Commission revealed that though the property used as the ultimate comparable was raw land at the time of the sale, to his knowledge it was the highest piece of property sold in Greenville. From a review of the record, it appears there was no other property that the appraiser could have used that would have been an exact comparable to the subject property. Carlton further tries to justify the necessity of a higher value to the property by comparing the facts in the case at bar to those in Howell v. State Highway Comm'n, 573 So.2d 754 (Miss.1990).
¶ 9. In Howell, a tract of land was taken by the State of Mississippi to widen Highway 16. Id. at 755. There were zoning requirements in place at the time of the taking which required a thirty five foot set back from the highway. Prior to the taking, the owners had a thirty-nine foot setback and were within the zoning requirements. Id. at 756. After the taking, the owners had a four foot setback from the highway and violated the zoning requirements. *174 Id. The owners of the property objected to the comparable values used by the appraiser to reach the value of the property. Id. Howell is distinguishable from the case at bar.
¶ 10. In the case at bar, unlike in Howell, this property was already in violation of the zoning ordinances prior to the taking by the Commission. Furthermore, the subject taking left substantially more than four feet between the buildings and the property. The Mississippi Transportation Commission compensated Carlton for the encroachment on Chillie's liquor store by purchasing the building, beyond that the appraiser for the Mississippi Transportation Commission determined that there was no additional severance damage to the property; however, Carlton felt that there had been additional severance damage.
¶ 11. Carlton called an appraiser on behalf of all the appellants to present a before and after value of the property. The appraiser for Carlton, contrary to the appraiser for the Mississippi Transportation Commission, considered severance damage in calculating a before and after value. The jury had the benefit of both appraisers's testimony and was left to evaluate the information presented and determine the sum which would give just compensation for the taking of the property. The jury determined that just compensation would be fifty-five thousand dollars.
¶ 12. Additionally, Howell, 573 So.2d at 757, cites Leflore v. Miss. State Hwy. Comm'n, 390 So.2d 284 (Miss.1980). In Leflore, the appraiser for the Highway Commission determined there were no severance damages to the remainder of the condemned property and, therefore, he did not include severance damages in his valuation. Id. at 286. The court found no reversible error since the Leflores presented evidence of the existence of severance damage. The court rationalized the jury was allowed to consider all the evidence concerning possible severance damages. The court also attributed value to the fact that the jury viewed the property, heard testimony from both parties, and was given proper instructions; therefore, the jury could return a verdict which excluded compensation for severance damages. Id. All of the aforementioned circumstances were present in the case at bar. We find this issue to be without merit.

II. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY ERRED WHEN IT ALLOWED MR. MALONE, THE APPRAISER FOR THE MISSISSIPPI TRANSPORTATION COMMISSION, TO GIVE TESTIMONY RELATIVE TO THE ZONING ORDINANCES APPLICABLE TO THE SUBJECT PROPERTY.
¶ 13. Carlton assigns as his second assignment of error that the trial court erred in allowing the appraiser of the Mississippi Transportation Commission to testify relative to the applicable zoning ordinances in the City of Greenville. At the trial in this matter, counsel for Carlton asked the following questions of the appraiser for the Commission:
Q: Well, would you concede, sir, that if they can't get the City to structure the zoning request so that parking can be permitted out there that it will be useless to them?
A: My understanding talking to the Permit Department, here's what the Permit Department told me, said when
BY MR. ADAMS: Your Honor, I object to this.
BY MR. METZ: Your Honor, he asked him the question. Now, he doesn't want him to answer it.
BY MR. ADAMS: I object to the hearsay, Your Honor.
BY MR. METZ: I don't know that it's heresay [sic] what he's been told in response to a question. I mean, it's how he didn't object to what the Caillouets the Carltons told him. I mean

*175 BY THE COURT: I'm going to let him testify. I will overrule the objection. He asked the question and he was going to tell how he got his answer.
MR. ADAMS CONTINUED:
A: Would you repeat your question, please?
Q: All right. I asked you if you had checked with the Permit Office about what is legally permissible out there once the take went through assuming that the building remained on the lot.
A: Yes, I did, and what II talked to the department up there, in fact, I talked to the department a couple of times and what they told me was that when something like this happens wherethis particular incident where the Highway Department is coming through affecting the property and taking the parking spaces that it's grand-fathered in and that there's not any restrictions or requirements for the property compatible to their rules and regulations in the after condition.
In light of this testimony the appraiser for the Commission did not factor severance damage into his valuation of the property. Additionally, Carlton's testimony presented a different version of the application of the zoning ordinances. Mr. Carlton testified that the property would not be in compliance with the zoning ordinances. The jury heard all of the aforementioned testimony. It was for the jury to decide how the issue of zoning or variation would alter the sum awarded as just compensation. "The matter of valuation and damage assessment was submitted to the jury on proper instructions.... Under our familiar rules that determination is beyond our authority to disturb." Crocker v. Mississippi State Highway Comm'n, 534 So.2d 549, 554 (Miss.1988) (citations omitted). We find this issue to be without merit.

III. WHETHER THE APPRAISER FOR THE MISSISSIPPI TRANSPORTATION COMMISSION PROPERLY APPLIED THE BEFORE AND AFTER RULE.
¶ 14. As a third assignment of error, Carlton argues that the value of the property was not proven by the appraiser with the Mississippi Transportation Commission in accordance with the before and after rule. Carlton has properly cited Sanderson Farms, Inc. v. State Highway Comm'n, 324 So.2d 243, 244 (Miss.1975) for a statement of the before and after rule:
The before and after rule has long been the formula by which damages are ascertained when part of a tract of land is taken for public use. In Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 866, 198 So. 565, 569 (1940) it was expressed as follows:
When part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public.
In cases of eminent domain, the burden of presenting competent evidence of fair value of the property being acquired rests with the condemning authority. Ellis v. Mississippi State Highway Comm'n, 487 So.2d 1339, 1342 (Miss.1986). If the authority fails to present competent evidence of value, then the acquisition of title to the property cannot occur. Id. After a review of the record this Court finds that the appraiser for the Commission was a sworn, competent witness who had been accepted by the court as an expert concerning appraisals to real property. Additionally, this Court finds that the appraiser for the Commission properly applied the before and after rule in reaching his value for just compensation. The appraiser valued the property before the taking at $149,700 and after the taking at $109,800, the difference *176 and just compensation being $39,000. Additionally, the appraiser allowed the sum of $1,450 to the lessee for the improvements he had made to the property.
¶ 15. Carlton argues that the valuation was not proper because the appraiser did not assign a value to damage to the remainder due to the taking. Carlton overlooks the fact that when valued not every partial taking will be considered to have resulted in damage to the remainder. Leflore v. Mississippi State Highway Comm'n, 390 So.2d 284, 286 (Miss.1980). From the testimony of the Commission's appraiser it is apparent that the appraiser did not find damage to the remainder due to the severance of the property. Carlton presented evidence to the contrary and therefore the issue became one of fact for the jury to decide. As with the other issues presented they were all fact questions for the jury's determination. Carlton was given the right to cross-examine witnesses and present his own sum relative to the extent of damages and just compensation under the before and after rule. The jury had all of this information and returned with a verdict of $55,000. We find this issue to be without merit.

IV. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY ERRED IN OVERRULING THE APPELLANTS' MOTION TO DISMISS THE PETITION FOR EMINENT DOMAIN.
¶ 16. As a fourth assignment of error, Carlton argues that the trial court erred in overruling the motion to dismiss the petition for eminent domain. Prior to trial, Carlton filed a motion to dismiss the complaint for eminent domain and again renewed this motion in his judgment notwithstanding the verdict. Carlton argues that the Mississippi Transportation Commission failed to follow the procedures listed in Mississippi Code Annotated section 65-1-47, as amended, which requires the Mississippi Transportation Commission to first attempt to reach an agreement with the landowner relative to compensation for the condemnation of their land. Miss. Code Ann. section 65-1-47 (Rev.1991), in paragraph three states "[s]aid commission, in case an agreement cannot be reached with the owners of land containing road building materials ... shall be authorized to have condemned any land needed for either of said purposes, as is fully set forth in this section." (emphasis added). This statute does not recite specific procedures that must be followed by the Commission. Additionally, in Dantzler v. Mississippi State Highway Comm'n, 190 Miss. 137, 199 So. 367, 369 (1941), the court held as follows:
The Statute, Section 4998, Code 1930, requires as a condition precedent to a condemnation of land by the highway commission that an attempt shall first be made to agree with the owner; and while this effort must be in good faith and on reasonable terms, the attempt need not be pursued further than to develop the fact that an agreement is impossible at any price which the condemning party is willing to pay, and particularly so when, as in this case, the price which the condemner offered is supported as fair and just by competent witnesses, not connected either with the condemner or the owner. 2 Lewis Eminent Domain, 3d Ed., pp. 895, 896. It is evident from this record that no prolongation of the efforts of the condemner to agree would have produced an agreement, save on terms which the highway commission would have regarded as requiring an unjust payment out of public funds, which it was their duty to endeavor to conserve; and they may point to the verdict of the jury in this case, rendered after a view of the premises, as a sufficient refutation of the charge of arbitrariness or want of good faith on the part of the commission as regards the offer made by it.
At the motion hearing, testimony was elicited from Carlton relative as to whether there was an agreement between the Commission and Carlton. The testimony given *177 by Carlton revealed that plans had been shown to him by an employee with the Mississippi Transportation Commission and that an offer had been made by the Commission. Testimony further revealed that Carlton had met this offer with a counter-offer; however, nothing further became of the counter-offer.
¶ 17. The Mississippi Transportation Commission made an offer and the offer was rejected. Therefore, the Mississippi Transportation Commission was within its statutory rights to seek to have the property condemned through an eminent domain proceeding. The fact that an agreement could not have been reached between these parties relative to the taking of this property is evident in the record of the eminent domain proceedings. The appraiser for the Mississippi Transportation Commission valued the damage to the property as a result of the condemnation at $39,900 with additional compensation of $1,450 for the lessee due to improvements made by the lessee to the property. The appraiser for the appellants valued the property at $147,000. Therefore, it is evident that there was little likelihood that an agreement could have been reached between the parties. Additionally, the jury rendered a verdict in the sum of $55,000 and this Court does not find basis under this issue to disturb this verdict. We find this issue to be without merit.

V. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN FOR WASHINGTON COUNTY ERRED IN PREVENTING THE APPELLANTS FROM ARGUING TO THE JURY THE TESTIMONY OF DR. WAGGONER AND FROM PREVENTING THE APPELLANTS FROM PRESENTING TO THE JURY THE ARGUMENT THAT THE JURY SHOULD RETURN A VERDICT FOR THE APPELLANTS IN THE AMOUNT OF DR. WAGGONER'S OPINION TESTIMONY AS TO THE VALUE OF $162,225.
¶ 18. Carlton argues as a fifth assignment of error that the trial court erred when it prevented the appellants from arguing to the jury the testimony of Dr. Waggoner valuing the property at $162,225 by using an income approach. The record reveals that Dr. Waggoner's testimony did not comply with the requirements of the before and after rule as enumerated in issue three. Furthermore, the testimony of Dr. Waggoner was speculative. During cross-examination, Dr. Waggoner admitted that he did not consider such factors as the impact of the renewal of a liquor license and the remodeling of the building in arriving at his value under the income approach and that both figures would alter the current value presented by him.
¶ 19. Carlton cites Crocker v. Mississippi State Highway Comm'n, 534 So.2d 549, 552 (Miss.1988) to support the admissibility of Dr. Waggoner's income approach testimony. However, Carlton fails to acknowledge that the appraiser in Crocker presented the court with a before and after value. Id. The appraiser testified that the Crocker's fair market value for the entire building would be $700/month, or $8,400/year, but after the take the apartment could still be rented for $250/ month. Therefore, Crocker would experience a $450/month loss for the remainder of the building. Id. Dr. Waggoner did not testify to an after rental value. Additionally, Mr. Robert Crook, appraiser for Carlton, testified that he had used the income approach in determining a before and after value of the property. Mr. Crook determined that the value of just compensation for the property would be $147,000. In light of the aforementioned factors, the trial court did not err in denying the appellants the right to argue the sum of $162,225 to the jury. We find this issue to be without merit. In reaching this determination this ruling is also applicable to issues one through four presented separately by Rickey DeAngelo, former lessee of Chillie's liquor store, relative to this issue.

*178 VI. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY ERRED AND VIOLATED THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND OF THE STATE OF MISSISSIPPI WHEN IT DID NOT INSTRUCT THE JURY RELATIVE TO THE STANDARD OF PREPONDERANCE OF THE EVIDENCE.
¶ 20. As a sixth assignment of error, Carlton argues that the trial judge erred when he removed a paragraph from a jury instruction which had placed the burden on the plaintiff to prove his case by a preponderance of the evidence. Carlton argues that since the trial judge struck the paragraph containing this language the jury was left with no standard to apply to measure the evidence presented by the State of Mississippi. The Mississippi Transportation Commission counters this argument and cited Ellis v. Mississippi State Highway Comm'n, 487 So.2d 1339 (Miss.1986), where the court relied on Mississippi State Highway Comm'n v. Crooks, 282 So.2d 232, 235 (Miss.1973), which stated:
The only burden on the condemner is simply to go forward with enough evidence as to the damages suffered by the landowner to make out a prima facie case. After a prima facie case has been made out by the condemner, then, if the landowner expects to receive more compensation than that shown, he must go forward with the evidence showing such damage.
The record reveals that the trial judge used this rationale in altering the jury instruction.
¶ 21. Carlton acknowledges the standard enumerated in Ellis; however, Carlton contends that Section 17 of the Mississippi Constitution of 1890 requires that if private property is to be taken some standard should be given to the jury to measure proof. This Court has reviewed Section 17 of the Mississippi Constitution of 1890 and while the statute gives an individual the constitutional right not to have their private property taken without just compensation it does not further extend to granting constitutional rights to jury instructions pertaining to the taking of the property of an individual. We find this issue to be without merit.

VII. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY ERRED IN NOT GRANTING THE MOTION OF THE APPELLANTS FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, OR, IN THE ALTERNATIVE A NEW TRIAL.
¶ 22. As a seventh assignment of error, Carlton argues that the jury's verdict in the amount of $55,000 was against the overwhelming weight of the relevant, credible and admissible evidence. The jury's determination in an eminent domain case is more than merely advisory. State Highway Comm'n of Mississippi v. Warren, 530 So.2d 704, 707 (Miss.1988). It is entitled to great deference, especially in those cases, as in the case now under consideration, where the jury is permitted a view of the property and hears competent, relevant evidence on the factual issues to be resolved. Id.
¶ 23. In State Highway Comm'n of Mississippi v. Havard, 508 So.2d 1099, 1105 (Miss.1987), the Mississippi Supreme Court quite thoroughly set forth the standard of review for jury verdicts in eminent domain cases as follows:
As in the case of any other jury determination of damages, we are not at liberty to order a new trial unless the verdict is so at variance with the evidence as to shock the conscience of the court. Except where the verdict is grossly excessive and evinces bias, passion and prejudice by the jury, we have no authority to require the prevailing party to submit to a second adjudication. This rule applies in eminent domain cases as in others.
Id. (citing Mississippi State Highway Comm'n v. Franklin County Timber Co., 488 So.2d 782, 787 (Miss.1986); Trustees of *179 Wade Baptist Church v. Mississippi State Highway Comm'n, 469 So.2d 1241, 1245 (Miss.1985); Mississippi State Highway Comm'n v. Baker, 241 Miss. 738, 743, 133 So.2d 277, 278-79 (1961); Mississippi State Highway Comm'n v. Ellzey, 240 Miss. 689, 690, 128 So.2d 561, 562 (1961)). "We are particularly loathe to disturb a jury's eminent domain award where, as here, the jury has personally viewed the premises." Havard, 508 So.2d at 1105 (citations omitted).
¶ 24. This Court finds after a review of the record that the testimony presented at trial by the Mississippi Transportation Commission and the owners of the property were in conflict relative to the value of the property and any damages to the remainder. The appraiser for the Mississippi Transportation Commission did not consider the remainder of the subject property as being devalued by the partial taking; however, the appraiser for the owners of the property presented evidence that the remainder of the property was devalued by the subject taking. This evidence was submitted by the parties for the consideration of the jury. Additionally, the jury was taken by the court to the subject property for an on-site inspection of the proposed property involved in the taking. The differences in the testimony relative to the damage to the remainder of the property was for the jury to decide. "The matter of valuation and damage assessment was submitted to the jury on proper instructions.... Under our familiar rules that determination is beyond our authority to disturb." Crocker v. Mississippi State Highway Comm'n, 534 So.2d 549, 554 (Miss.1988) (citations omitted). We find this issue to be without merit.

VIII. WHETHER THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY, MISSISSIPPI ERRED IN NOT GRANTING THE MOTION OF DEFENDANTS FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, OR, IN THE ALTERNATIVE FOR A NEW TRIAL, BECAUSE THE CUMULATIVE EFFECT OF ALL OF THE ABOVE ERRORS SUBSTANTIALLY IMPEACHES THE VERDICT OF THE JURY.
¶ 25. Carlton argues as an eighth assignment of error that the relief sought by this appeal is effectively mandated by the cumulative effect of all of the errors committed in this trial. In light of this Court finding no merit to the arguments presented in issues one through seven, we likewise find this issue to be without merit.
¶ 26. THE JUDGMENT OF THE SPECIAL COURT OF EMINENT DOMAIN OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR.
KING, P.J., IRVING AND MOORE, JJ., NOT PARTICIPATING.