# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00078-SCT

***ROBERT D. ADCOCK AND***
***SHIRLEY DEAN ADCOCK***

***v.***

***MISSISSIPPI TRANSPORTATION COMMISSION***

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2006 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | JAMES C. MAYO |
| ATTORNEYS FOR APPELLEE: | JOSH FREEMAN |
| | ALAN M. PURDIE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/20/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Aggrieved by the judgment of $17,900 awarded by the Special Court of Eminent Domain of Winston County, Mississippi, as compensation for 4.65 acres condemned by the Mississippi Transportation Commission (MTC), Robert and Shirley Adcock file this appeal. Finding that the trial court did not err in denying the Adcocks' Motion for New Trial, or in the Alternative, a Judgment Notwithstanding the Verdict, and did not abuse its discretion in allowing the expert testimony of MTC's appraiser, we affirm.

FACTS

¶2.     The Adcocks owned 122 acres of real property in Winston County, Mississippi. Highway 25 splits the southeast corner of their 122-acre tract, leaving approximately ten acres on the eastern side of the highway. The Adcocks' home is located on the western side of the highway, and a garden lies on the eastern side. Prior to the Highway 25 expansion project, the Adcocks could drive across Highway 25 to access the ten-acre tract. Additionally, both the eastern and western portions of the property had access to Highway 25.

¶3.     In 1998, MTC sought to expand a section of Highway 25 and filed a complaint in the Special Court of Eminent Domain seeking a 4.65-acre portion of the Adcocks' property. The expansion widened Highway 25 from two lanes to four lanes and left the Adcocks with no direct access to Highway 25.

¶4.     On May 4, 2006, a jury trial was held in which MTC and the Adcocks presented expert appraisal testimony. MTC's appraiser, Tommy Madison, determined that the highest and best use of the property was agricultural. Madison considered the income[1], cost[2], and market data/comparable sales[3] methods of appraisal, but ultimately applied the comparable

---

[1] The income or earnings approach estimates value based upon the property's income-producing capacity under typical management. *Rebelwood, Ltd. v. Hinds County*, 544 So. 2d 1356, 1361 n.7 (Miss. 1989) (citing *Crocker v. Miss. State Highway Comm'n*, 534 So.2d 549, 553 (Miss. 1988)).

[2] The cost approach is "a determination of the 'current' cost of reproducing property, less loss in value from deterioration and functional and economic obsolescence—accrual depreciation." *Rebelwood, Ltd.*, 544 So. 2d at 1360 n.5.

[3] The market data or comparable sales approach is an estimate of value based "upon prices actually paid in open market transactions for various properties similar to the one at

sales method. Madison compared the sales of three properties to the Adcocks' property. All three comparison properties were located in Winston County and were chosen based on factors such as size, location, access, topography, and the time of the sales. Madison made slight adjustments to account for differences between the comparable properties and the Adcocks' property.[4]

¶5.     Madison appraised the fair market value of the Adcocks' 122 acres in its "before" condition at $276,830. This amount was based on 122 acres valued at $1,350 per acre, which totals $164,700; plus improvements, such as structures, in the amount of $104,530, and the cost of timber in the amount of $7,600.

¶6.     Madison appraised the "after" condition of the remaining 117 acres at $258,930. This amount was based on 117.35 acres of real property at $1,350 per acre for an estimated total of $158,400; plus improvements, such as structures, in the amount of $104,530, and a deduction of $4,000 for the cost to cure fencing. Based on these figures, Madison estimated $17,900 to be just compensation for taking the 4.65 acres.

¶7.     Madison acknowledged that the "after" condition left the Adcocks with no access to Highway 25 from either portion of their property. However, he did not assess damages for the lack of access on the western side of the property because the Adcocks still had access to Highway 19. Likewise, Madison did not diminish the value of the remaining 6.74 acres

---

issue in the appraisal." ***Rebelwood, Ltd.***, 544 So. 2d at 1360-61.

[4] Madison made a "small location adjustment" for all three comparable properties because they were less remote than the Adcocks' property. Additionally, Madison slightly increased the value of the Adcocks' property because of its proximity to two highways.

on the eastern side of the property, since he had recently traveled to that parcel and considered it to have access, as well.

¶8.   The Adcocks' appraiser, Larry Caraway, considered the highest and best use of the property to be both residential and agricultural. Caraway, like Madison, considered all three appraisal methods before selecting the comparable sales method as the best approach in this case. He appraised the fair market value of the Adcocks' 122 acres in its "before" condition at $301,750. This amount was based on 121 acres of real property valued at $1,750 per acre for a total of $211,750; plus one acre and the home in the amount of $75,000, and other buildings and improvements in the amount of $15,000.

¶9.   Caraway appraised the "after" condition of the remaining 117 acres at $239,290. This amount was based on 117.35 acres of real property valued at $1,400 per acre for a total of $164,290; plus the home in the amount of $60,000, and other buildings and improvements in the amount of $15,000. Caraway then added $4,000 in damages for the cost to replace fencing. Based on these figures, Caraway estimated just compensation for taking the 4.65 acres at $66,460.

¶10.   Caraway reduced the per-acre cost from $1,750 to $1,400 an acre because approximately 3,200 feet of frontage were lost with the condemnation. Caraway also reduced the value of the Adcocks' home from $75,000 to $60,000 based on their lack of access to Highway 25. Caraway acknowledged that the Adcocks still had access to and from their home, but said that "it wasn't near as good."

¶11.   The jury returned a verdict in favor of the Adcocks in the amount of $17,900, and a final judgment was entered on July 17, 2006. The Adcocks filed a Motion for New Trial; or

4

in the Alternative, a Judgment Notwithstanding the Verdict; or, in the Alternative, an Additur, which the trial court denied on December 27, 2006. The Adcocks now appeal to this Court.

## DISCUSSION

**I.     Whether the trial court abused its discretion in allowing MTC's appraiser to testify.**

¶12.    A trial court's decision to admit expert testimony is reviewed on an abuse-of-discretion standard. ***Roberts v. Grafe Auto Co.***, 701 So. 2d 1093, 1098 (Miss. 1997) (citing ***Seal v. Miller***, 605 So. 2d 240, 243 (Miss. 1992)).

¶13.    The Adcocks assert that the trial court should not have allowed the testimony of MTC's expert appraiser, Tommy Madison, because his testimony was not reliable. The Adcocks charge that Madison's testimony was "purely speculative and not grounded by any rational basis."

¶14.    To determine the admissibility of expert testimony, this Court has adopted the standard initially set out by the United States Supreme Court in ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993), and later modified in ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed.2d 238 (1999). ***Webb v. Braswell***, 930 So. 2d 387, 397 (Miss. 2006) (citing ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31 (Miss. 2003)). Under the modified ***Daubert*** standard, the trial court must first determine whether expert testimony is relevant and, second, whether the proffered testimony is reliable. ***Daubert***, 509 U.S. at 589; ***McLemore***, 863 So. 2d at 38

5

(citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).

¶15.    Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Rule 401 favors admission if the evidence has any probative value at all. *Holladay v. Holladay*, 776 So. 2d 662, 676 (Miss. 2000). Because Madison's testimony regarding damages and the methods he used to arrive at those amounts are relevant to an eminent domain case, we find that his testimony satisfied the first prong of the modified *Daubert* standard. *See Daubert*, 509 U.S. at 589; *McLemore*, 863 So. 2d at 40.

¶16.    The party offering the expert testimony also must show that the expert's opinion is based upon scientific methods and procedures, not unsupported speculation. *Id*. at 36 (citing *Daubert*, 509 U.S. at 590). Factors to consider may include "whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether . . . there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance" within the expert's particular field. *McLemore*, 863 So. 2d. at 37 (citing *Daubert*, 509 U.S. at 592-94).

¶17.    "[F]air market value is an opinion best formed by competent persons pursuing not just one, but three separate and distinct but nevertheless interrelated, approaches to value: the cost approach, the market data or sales comparison approach, and the income approach." *Potters II v. State Highway Comm'n*, 608 So. 2d 1227, 1231 (Miss. 1992) (citing *e.g.*, American

6

Institute of Real Estate Appraisers, *The Appraisal of Real Estate*, 62-63 (9th ed. 1987)).

However, all three methods of valuation need not be considered in every appraisal, particularly those of non-commercial property. *See **Eller Media Co. v. Miss. Transp. Comm'n***, 882 So. 2d 198, 203 (Miss. 2004) (for example, the income approach would be useless and irrelevant for the appraisal of a residence).

¶18.   Madison considered all three approaches before applying the comparable sales method to arrive at his "before" and "after" values for the Adcocks' property.  The comparable sales approach is an accepted appraisal method which provides a value estimate based "upon prices actually paid in open market transactions for various properties similar to the one at issue in the appraisal." ***Rebelwood, Ltd. v. Hinds County***, 544 So. 2d 1356, 1360-61 (Miss. 1989).  The comparable properties do not have to be identical in every respect. ***Howell v. State Highway Comm'n***, 573 So. 2d 754, 757 (Miss. 1990) (citing ***Miss. State Highway Comm'n v. Franklin County Timber Co., Inc.***, 488 So. 2d 782, 785 (Miss. 1986)).  To require exact similarities would make it almost impossible to find a comparable tract of land or sale. ***Miss. Transp. Comm'n v. Fires***, 693 So. 2d 917, 923 (Miss. 1997) (citing ***Pearl River Valley Supply Dist. v. Wood***, 252 Miss. 580, 172 So. 2d 196 (Miss. 1965)).

¶19.   A trial judge has wide discretion in allowing testimony of comparable sales, and this Court encourages "liberal cross-examination to permit testing of the true utility of the comparable sales." ***Howell***, 573 So. 2d at 757 (citing ***Franklin County Timber Co., Inc.***, 488 So. 2d at 785).  The valuation is discredited if the evidence shows that the comparables are entirely different from the property being taken. ***Howell***, 573 So. 2d at 757 (citing ***Franklin County Timber Co., Inc.***, 488 So. 2d at 785).

¶20.   In selecting three comparable properties, Madison considered a number of factors including size, location, access, topography, and the time of the sales. The first comparable property sold in October 2000 and consisted of 139 acres of agricultural property. The second comparable property sold in March 1999 and consisted of 103.3 acres of agricultural property. Finally, the third comparable property sold in November 1999 and consisted of 98.5 acres of agricultural property. All three properties had timber and access to a public road, but were less remote than the Adcocks' property.

¶21.   Madison explained that he adjusted the sales prices for the comparable properties because they were all closer to the city of Louisville than the Adcocks' property. Additionally, he slightly increased the value of the Adcocks' property based on its proximity to two highways. Such adjustments for dissimilarities are appropriate when applying the comparable sales method. *Trowbridge Partners, L.P. v. Miss. Transp. Comm'n*, 954 So. 2d 935, 940 (Miss. 2007); *Rebelwood, Ltd.*, 544 So. 2d at 1361 n.6 (citing American Institute of Real Estate Appraisers, *The Appraisal of Real Estate,* 70-71, 311-42 (9th ed. 1987)).

¶22.   Madison also explained why he assessed no damages to the Adcocks' property for the lost access to Highway 25 and the loss of frontage. Madison stated that the Adcocks maintained reasonable access to and from their property from Highway 19 and that mere inconvenience is not a compensable damage. Furthermore, after looking at sales of agricultural properties in remote areas all over the county, he found that frontage did not impact sales price. He explained that frontage is important for commercial property, while access is key for agricultural property.

8

¶23. In addition to the comparable sales method, Madison used a cost publication to appraise the value of the Adcocks' home. He also accounted for improvements to the Adcocks' property and allocated damages for the cost to cure fencing.

¶24. We find that the trial court did not abuse its discretion in allowing the expert testimony of MTC's appraiser, Madison. Madison's testimony was both relevant and based upon established appraisal methods. The comparable properties Madison used were similarly situated to the Adcocks' property, and his estimates were not based upon mere speculation. Furthermore, he was subjected to cross-examination to test the true utility of the comparable sales. *See Howell*, 573 So. 2d at 757 (citing *Franklin County Timber Co., Inc.*, 488 So. 2d at 785).

**II. Whether the trial court erred in denying the Adcocks' Motion for New Trial, or in the Alternative, a Judgment Notwithstanding the Verdict.**

**A. Motion for Judgment Notwithstanding the Verdict**

¶25. This Court applies a de novo standard of review to a trial court's denial of a judgment notwithstanding the verdict (JNOV). *Johnson v. St. Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 22 (Miss. 2007). A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict. *Id.* (citing *Natchez Elec. & Supply Co. v. Johnson*, 968 So. 2d 358, 362 (Miss. 2007)). "'Substantial evidence' is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." *Natchez Elec. & Supply Co.*, 968 So. 2d at 362 (citing *Blake v. Clein*, 903 So. 2d 710, 731 (Miss. 2005)). The evidence is viewed in the light most favorable

9

to the verdict. *Johnson*, 967 So. 2d at 22 (citing *Canadian Nat'l/Ill. Cent. R.R. Co. v. Hall*, 953 So. 2d 1084, 1089 (Miss. 2007)).

¶26. The Adcocks argue that MTC failed to provide sufficient evidence that the loss of frontage and loss of access to Highway 25 did not diminish the value of their property. The Adcocks submit that MTC's failure to account for this diminution in value renders MTC's appraisal insufficient to establish a prima facie case.

¶27. The testimony of MTC's appraiser provided substantial evidence that the Adcocks continue to have reasonable access to their property and that the lost frontage did not impair the value of their remaining property. So long as other roads afford reasonable access to the property, a jury may find that no damages are warranted by loss of access to a highway. *Trustees of Wade Baptist Church v. Miss. State Highway Comm'n*, 469 So. 2d 1241, 1244 (Miss. 1985) (citing *Muse v. Miss. State Highway Comm'n*, 233 Miss. 694, 706, 714; 103 So. 2d 839, 843, 847 (1958)). Additionally, lost frontage is considered only to the extent that fair market value of the property is actually impaired. *State Highway Comm'n v. Havard*, 508 So. 2d 1099, 1101 (Miss. 1987) (citing *e.g.*, *Trustees of Wade Baptist Church*, 469 So. 2d at 1244-45)).

¶28. The Adcocks compare their case to *Sanderson Farms, Inc., v. State Highway Comm'n*, 324 So. 2d 243 (Miss. 1975). In *Sanderson Farms, Inc.*, the Mississippi State Highway Commission took a portion of Sanderson Farms' industrial property, which included a 15,000-square-foot parking lot. *Sanderson Farms, Inc.*, 324 So. 2d at 244. The taking of the parking lot required Sanderson Farms to relocate the lot to another part of the plant, yet the Highway Commission's appraisal did not consider the diminution in value

10

caused by the loss and relocation of the parking lot. *Id.* This Court reversed and remanded the case, finding that taking a portion of the parking lot had affected the use and value of the remaining property. *Id.* at 244-45.

¶29. Similarly, in *Howell*, the appraised property consisted of .42 acres of commercial property, which included a building and a parking lot. *Howell*, 573 So. 2d at 755-56. The Highway Commission's taking included a portion of the parking lot. *Id.* at 758. Additionally, the lost frontage affected future additions to or reconstruction of the existing building. *Id.* Zoning ordinances required that no building be built within thirty-five feet of the highway. *Id.* at 756. After the taking, only four to six feet remained between the building and the highway. *Id.* This Court held that the loss of the parking lot and the lost frontage had "undeniably" affected the value of the Howells' remaining property. *Id.* at 758.

¶30. In contrast, the Adcocks are not claiming loss of value to commercial property, nor has the lost frontage "undeniably" affected the value of their remaining property.

¶31. The jury viewed the property and heard testimony from both MTC and the Adcocks' appraiser. Where the jury has viewed the premises, this Court is "particularly loathe" to disturb the jury's verdict and will not do so if there is any substantial evidence in the record supporting the jury's damage assessment. *Miss. State Highway Comm'n v. Viverette*, 529 So. 2d 896, 900 (Miss. 1988). The jury acted within its prerogative and province to exclude severance damages. *See Leflore v. Miss. State Highway Comm'n*, 390 So. 2d 284, 286 (Miss. 1980).

¶32. Thus, we find that the trial court did not err in denying the Adcocks' motion for judgment notwithstanding the verdict.

11

### B.    Motion for a New Trial

¶33.    A motion for new trial is a challenge to the weight of the evidence and is reviewed under an abuse-of-discretion standard. *Johnson*, 967 So. 2d at 23. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will disturb a verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. (quoting *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005)). This Court assumes the role of a thirteenth juror in reviewing a challenge the weight of the evidence. *Johnson*, 967 So. 2d at 23 (citing *Bush*, 895 So. 2d at 844 n.2).

¶34.    We review the evidence in the light most favorable to the verdict. *Johnson*, 967 So. 2d at 23 (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). A new trial is warranted only if the verdict is contrary to the substantial weight of the evidence. *Johnson*, 967 So. 2d at 23 (citing *Blossman Gas, Inc. v. Shelter Mut. Gen. Ins. Co.*, 920 So. 2d 422, 424 (Miss. 2006)).

¶35.    This verdict does not shock the conscience nor is it contrary to the substantial weight of the evidence. The jury was free to accept or reject any or all of the testimony and evidence presented by MTC and the Adcocks. The jury accepted the testimony and evidence that supported MTC and rendered a verdict in its favor. Accordingly, we find that the trial court did not err in denying the Adcocks' motion for new trial.

### CONCLUSION

¶36.    We find that the trial court did not commit error in denying the Adcocks' Motion for New Trial, or in the Alternative, a Judgment Notwithstanding the Verdict. Furthermore, the

12

trial court did not abuse its discretion in allowing the expert testimony of MTC's appraiser.

Therefore, we affirm.

¶37.   **AFFIRMED.**

**SMITH, C.J., DIAZ, P.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**EASLEY, JUSTICE, DISSENTING:**

¶38.   I respectfully dissent with the majority's opinion today.  I believe the testimony and evidence presented by the Mississippi Transportation Commission (MTC) failed to provide sufficient evidence of a prima facie case for condemnation, and the taking by MTC resulted in a diminution of value of the Adcocks' property.  The evidence presented by MTC was not based on comparable sales.  Therefore, I believe that the trial court erred by denying the Adcocks' post-trial motion for a judgment notwithstanding a verdict (JNOV) and would reverse and remand the case on this issue.

**I.**

¶39.   The Adcocks assert that the trial court erred by denying their motion for JNOV because MTC failed to provide sufficient evidence that the taking did not result in a diminution of value of their real property.  More specifically, the Adcocks argue that MTC's appraiser, Madison, failed to award damages for the remaining 117 acres where the taking resulted in the loss of all 3,200 feet of frontage accessible to Highway 25.

¶40.   In *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006), this Court set forth the standard of review for the grant or denial of a JNOV.  This Court held:

13

Our standard of review of a trial court's grant of a JNOV, a peremptory instruction and a directed verdict is de novo, and we apply the same criteria as that of the trial court:

> [T]his Court will consider the evidence in the light most favorable to the appellee [nonmovant], giving that party the benefit of all favorable inference [sic] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant [movant] that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Steele v. Inn of Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss. 1997) (citing *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993)).

*White*, 932 So. 2d at 32; *see also* *McFarland v. Entergy Miss., Inc.*, 919 So. 2d 894, 899-900 (Miss. 2005). "A motion for a JNOV tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence." *McFarland*, 919 So. 2d at 899 (quoting *White v. Yellow Freight Sys.*, 905 So. 2d 506, 510 (Miss. 2004)).

¶41. The Adcocks argue that MTC failed to provide legally sufficient evidence to make a prima facie case for condemnation. The Adcocks claim that Madison's testimony was insufficient since he failed to provide an estimate of damages to their property for the loss of access to Highway 25.

¶42. In *Ellis v. Mississippi State Highway Commission*, 487 So. 2d 1339, 1342 (Miss. 1986), this Court held that in eminent domain cases, the condemnor must prove the value of the condemned property. This Court further stated:

14

> The only burden on the condemnor is simply to go forward with enough evidence as to the damages suffered by the landowner to make out a prima facie case, . . . Whether the condemnor has made a prima facie case is a question of law to be determined by the Court. After a prima facie case has been made out by the condemnor, then, if the landowner expects to receive more compensation than that shown, he must go forward with the evidence showing such damage.

*Id*. (quoting *Miss. State Highway Comm'n v. Crooks*, 282 So. 2d 232, 235 (Miss. 1973));

*see Howell v. State Highway Comm'n*, 573 So. 2d 754, 757 (Miss. 1990) ("We previously have placed the burden on the Highway Commission to prove the value of condemned property and we have required dismissal of the proceedings when the Highway Commission has failed to properly establish this value."). *See also Martin v. Miss. Transp. Comm'n*, 953 So. 2d 1163, 1166 (Miss. Ct. App. 2007) (The State has the burden of proof to establish the value of the property taken in an eminent domain proceeding.); *Carlton v. Miss. Transp. Comm'n*, 749 So. 2d 170, 175 (Miss. Ct. App. 1999).

¶43.  When this Court is faced with an eminent domain proceeding, the Court uses the "before and after" rule "to determine the compensation due a landowner when a portion of his property is taken through eminent domain." *Blanton v. Bd. of Supervisors*, 720 So. 2d 190, 193 (Miss. 1998); *Carlton*, 749 So. 2d at 175. In *Mississippi State Highway Commission v. Hillman*, 189 Miss. 850, 866, 198 So. 565, 569 (1940), this Court held:

> When part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public.

15

*See also* ***Blanton***, 720 So. 2d at 194; ***Miss. Transp. Comm'n v. Fires***, 693 So. 2d 917, 920-21 (Miss. 1997); ***Howell***, 573 So. 2d at 757; ***Sanderson Farms, Inc. v. State Highway Comm'n***, 324 So. 2d 243, 244 (Miss. 1975).

¶44.    In ***Sanderson Farms***, this Court held that "an appraisal of only the part taken, where less than the whole is involved, ignores the fact that severance of a part of a tract may affect the value of the remainder.  Size, use, location, topography and like factors determine the value of land." ***Sanderson Farms***, 324 So. 2d at 244.  "[T]he true effect of taking less than the whole of a tract of land can be determined only with the benefit of an appraisal of the whole, before and after a taking." ***Id***.  In ***Mississippi State Highway Commission. v. Franklin County Timber Co.***, 488 So. 2d 782, 785 (Miss. 1986), this Court defined just compensation as follows:

> The just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a dimunition [sic] in the value of the remainder . . .  Anything less than the foregoing would encroach upon the constitutional guarantee of just compensation. ***Mississippi State Highway Commission v. Colonial Inn, Inc.***, 246 Miss. 422, 432, 149 So. 2d 851, 856 (1963).

¶45.    This Court has addressed the issue of severance damages in several cases.  In ***Leflore v. Mississippi State Highway Commission***, 390 So. 2d 284, 286  (Miss. 1980), this Court found no error where a jury excluded severance damages.  In ***Leflore***, the Highway Commission condemned more than twenty acres of the Leflores' property for a four-lane expansion project on Highway 82. ***Id***. at 285.  A number of witnesses gave varying testimony on the issue of severance damages. ***Id***. at 286.  The Leflores' witnesses testified that a lack of access to the new roadway caused severance damages, whereas the Highway

16

Commission's witnesses testified that there were either no access problems or no severance damages to the property. *Id*. The Leflores appealed the jury verdict, arguing that: (1) the Highway Commission failed to include severance damages for the remainder of the property in its valuation, and (2) the jury verdict was against the overwhelming weight of the evidence, evincing bias, passion, or prejudice. *Id*. at 285. This Court upheld the jury verdict, stating:

> It was the prerogative and province of the jury, after viewing the property and hearing the testimony for both sides, to return a verdict excluding severance damages. Thus, it is our opinion no reversible error exists on this point.

*Id*. at 286. *See also Sanderson Farms*, 324 So. 2d at 244 (the Court reversed and remanded a jury verdict for a new trial where the appraisal was not based on the "before and after" rule).

¶46.    However, in *Sanderson Farms* and *Howell*, this Court further analyzed when a taking affects the use and value of remaining property. In *Sanderson Farms*, the taking of a portion of Sanderson Farms' industrial property included a 15,000-square-foot parking lot which required the relocation of the lot to another portion of the plant. *Sanderson Farms*, 324 So. 2d at 243. This Court determined that the taking of the parking lot affected the use and value of the remaining property. *Id*. In its appraisal of Sanderson Farms' property, the Highway Commission determined only the value of the portion of taken property as opposed to the value of the whole property using the "before and after" method. *Id*. at 244. This Court reversed and remanded the case because the Highway Commission's appraisal did not prove damages in accordance with the "before and after" rule. *Id*. at 244-45. The Court found that

17

the taking of the parking lot affected the use and value of the remaining property owned by Sanderson Farms. *Id*. at 243.

¶47.    In *Howell*, the Highway Commission condemned a thirty-five-foot strip of Don and Jimmy Howell's  property to widen Highway 16. *Howell*, 573 So. 2d at 755. The taking reduced the amount of accessible frontage on two different roads. *Id*. at 756. The Howells also had a structure located on the property which was thirty-nine feet from the highway. *Id*. The local zoning ordinances required a thirty-five-foot setback line from highway right-of-way. *Id*. After the taking, the structure had four feet in the front of the property and five or six feet in the rear of the property. *Id*. In addition, the taking also interfered with the Howells' parking lot. *Id*. at 758.

¶48.    This Court in *Howell* held that loss of frontage that makes a structure closer to a roadway *may* have an adverse effect on property value. *Id*. at 757. Under the facts of *Howell*, this Court found that the Highway Commission's appraisal, which allegedly was based on comparable sales of vacant lots, was erroneous. *Id*. at 758. The Court held:

> We find that the evidence unquestionably shows that a portion of the Howells' parking area was taken and that the Howells lost frontage which moved their structure closer to the roadway, which would affect future building onto the existing structure and could potentially affect future reconstruction to the building. Because the Highway Commission's take undeniably affects the value of the remaining property, the Highway Commission should not have been allowed to have its witness base his appraisal of fair market value of the property on the value of noncomparable empty lots.
>
> **To establish a prima facie case of fair market value the Highway Commission was required to base its valuation on comparable sales which in this case must contain a building on the property and which must take into account the partial loss of the parking lot. Because the Highway Commission was remiss in its duty to establish fair market value of the property, the before and after valuations were therefore invalid.** Both the

18

objection to the appraiser's testimony of the before and after value of the property and the motion to dismiss should have been granted.

*Id.* (Emphasis added). Accordingly, this Court reversed and remanded for new trial. *Id.* Clearly, this Court in *Howell* reversed and remanded the case because the Highway Commission based its valuation on the sales of vacant lots instead of comparable sales of land with buildings and loss of a parking area.

¶49. MTC's expert, Madison, testified that the fair market value of the Adcocks' property in the "before" condition was $276,830, and the fair market value of the Adcocks' property in the "after" condition was $258,930. Therefore, in Madison's expert opinion, the compensation due to the Adcocks for taking the 4.65 acres was $17,900.

¶50. Similar to *Sanderson Farms* and *Howell*, Madison's appraisal did not include any valuation of damages to the remainder of the property. Also, Madison's appraisal did not include damages for the loss of frontage access to Highway 25. While Madison testified that he considered the loss of direct access to Highway 25, he did not provide for any damages for that loss. Madison testified that he deemed the best use of the Adcocks' land to be agricultural, and the Adcocks had alternate access from Highway 19 as well as access to the seven-acre tract of land. Madison did not consider the inconvenience of using an alternate route of ingress and egress to be a compensable damage.

¶51. Furthermore, Madison's testimony of comparable sales of property included three properties in Winston County. However, the testimony and the exhibits did not demonstrate that the three properties were similar to the Adcocks' property. None of the properties abutted onto Highway 25 and none of the properties had access to two highways. In fact,

none of the properties abutted any highway. These properties were merely large tracts of land located in Winston County, without direct access to a highway.

¶52.    The Adcocks' expert, Caraway, testified that the fair market value of the Adcocks' property in the "before" condition was $301,750, and the fair market value of the Adcocks' property in the "after" condition was $239,290. Therefore, in Caraway's expert opinion, the compensation owed to the Adcocks for taking the 4.65 acres was $66,460. Caraway also testified that he reduced the value of the Adcocks' remaining property because of the loss of direct access to Highway 25.

¶53.    Applying our holdings in *Sanderson Farms* and *Howell*, the evidence shows that the Adcocks' loss of direct access to Highway 25 from both tracts of their land affected the value of the remaining property. In addition, MTC based its appraisal of the fair market value of the Adcocks' property on the value of sales of noncomparable land. MTC compared the value of the Adcocks land to local sales of property with no direct access to Highway 25 or any major highway. This Court in *Howell* held that to establish a prima facie case, the Highway Commission was required to base the valuation on comparable sales. *Howell*, 573 So. 2d at 758. Likewise, MTC was required to base its valuation on comparable sales of properties similar to the Adcocks' property. Here, MTC based its comparison on local tracts of land with no direct access to a major highway and with limited or no structures.

## II.

¶54.    For the foregoing reasons, the Special Court of Eminent Domain for Winston County, Mississippi, erred by denying the Adcocks' post-trial motions for JNOV. Therefore, I would

reverse the judgment and remand the case to the Special Court of Eminent Domain for Winston County.