# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01036-COA

| | |
|---|---|
| COAST PLAZA LLC, MICHAEL J. THOMPSON, KEITH PAUL GAGNON, AND ESTATE OF MILTON L. GAGNON | APPELLANTS/ CROSS-APPELLEES |

**v.**

| | |
|---|---|
| RCH CAPITAL LLC, RCH MORTGAGE FUND V LLC, AND MICHAEL J. YENTZEN ESQ., AS SUBSTITUTE TRUSTEE | APPELLEES/ CROSS-APPELLANTS |

DATE OF JUDGMENT: 06/19/2017
TRIAL JUDGE: HON. SANFORD R. STECKLER
COURT FROM WHICH APPEALED: HANCOCK COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS: MICHAEL JAMES THOMPSON JR.
KEITH PAUL GAGNON (PRO SE)
ATTORNEY FOR APPELLEES: MICHAEL ANDREW McDONALD
NATURE OF THE CASE: CIVIL - REAL PROPERTY
DISPOSITION: ON DIRECT APPEAL: AFFIRMED.
ON CROSS-APPEAL: AFFIRMED - 06/11/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., McCARTY AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1. Coast Plaza LLC, Michael J. Thompson, Keith Paul Gagnon, and the Estate of Milton L. Gagnon (collectively referred to as "Coast Plaza") appeal the chancellor's denial of their complaint to enforce a settlement agreement purportedly entered by the parties. RCH Capital LLC, RCH Mortgage Fund V LLC (collectively referred to as "RCH"), and Michael J. Yentzen, Esq., as substitute trustee, cross-appeal the chancellor's purported finding that an offer and acceptance existed among the parties. Because we find that the chancellor properly

denied Coast Plaza's complaint to enforce the settlement agreement, we affirm.

FACTS

¶2.     Coast Plaza LLC (the "LLC") is a Mississippi limited liability company that was owned equally by Michael J. Thompson[1] and Milton L. Gagnon. Milton Gagnon, who lived in Metairie, Louisiana, died testate on or about July 29, 2016. The LLC's sole asset was certain real property, a strip mall in Waveland, Mississippi.

¶3.     Prior to Milton Gagnon's death, the LLC entered into a promissory note secured by a deed of trust on the property. Thompson and Milton Gagnon signed the note as personal guarantors. RCH later purchased the note and became the assignee of the original lender's rights thereunder.

¶4.     On November 4, 2016, RCH issued a notice of default to Coast Plaza for deficiency under the note. Shortly thereafter, RCH's counsel issued a notice of intent to foreclose on the LLC's property and offer it for sale on December 30, 2016.

¶5.     On November 29, 2016, Ryan Razook, manager of RCH Mortgage Fund V LLC, sent the following email to Thompson:

> Mike,
>
> Thank you for your email. Regarding a conversation I just had in our office I want to follow up with you and provide you with an option.

---

[1] Michael J. Thompson Sr. is the half-owner of Coast Plaza LLC. Michael J. Thompson Jr. is the attorney for the Appellants/Cross-Appellees on appeal. All references to "Michael J. Thompson" and "Thompson" herein refer to Michael J. Thompson Sr.

Provided there are no liens or other debt on the property, RCH would accept a [d]eed in lieu of foreclosure from you.

If you would like to do this, we would agree to satisfy the debt and therefore waive personal liability under the guarantees.

*This would avoid the possibility of a deficiency judgment against you after the foreclosure sale.

Please let me know if you are interested in this and we will work to prepare the documents needed.

Thanks[,]

Ryan

¶6. On November 30, 2016, Thompson responded that he would meet with one of the "prime movers" involved with Milton Gagnon's estate (the "Gagnon Estate") "to bring the [e]state up to speed." Thompson further stated that he "[did] not anticipate any resistance" and that he would be in touch. Later that afternoon, Thompson emailed Razook and stated:

RCH:

Be advised that your offer is accepted.

Kindly reply to acknowledge your receipt of this acceptance.

mjt

¶7. Razook, on behalf of RCH, replied to Thompson's email that same afternoon:

Mike,

Thank you for your email.

We have already ordered a title search to confirm if there are any other debts or claims against the property. Once we have that report and it shows the

3

property is clear of other liens, we will provide you with a request for what is needed from you and/or [the Gagnon Estate] that would allow us to accept a deed in lieu of foreclosure.

To give you a heads up, below is some of what we're going to be working through and requesting:

> 6. [sic] Title search that you ordered – showing no other liens
> 7. Confirm status of real estate taxes and [i]nsurance
> 8. Current and full financial disclosure by borrower and guarantors
> 9. Full cooperation from [b]orrower and delivery of
>> a. Keys to the property[]
>> b. Original leases
>> c. List of vendor and utility accounts
>>> i. Confirm that accounts are current
>> d. Lease estopp[el]s executed by tenants
>>> i. RCH will prepare this form and provide to you
>> e. Indemnification/statement/guaranty there are no structural or environmental issues that [have] not been disclosed[]
> 10. For our company to be able to accept a deed in lieu, there has to be certainty of a smooth transition into ownership and that we are not exposing ourselves to unknown liabilities or claims.

*Please note: RCH has not agreed to modify or waive any of its rights under the loan documents or its rights to foreclosure and [to] pursue judgments against the guarantors. Any and all changes to the governing loan documents must be in writing and executed by all parties. It is our intent to have our attorney continue to move towards the foreclosure sale on 12/20/16 until such time an agreement in writing is executed by all parties and dictates a [different] course of action.

Once we receive the title search report, I will follow up with you.

Thanks[,]
Ryan

Following this exchange, the parties worked towards transferring a deed in lieu of foreclosure.

4

¶8.    On December 5, 2016, Razook emailed Thompson and stated that the title search revealed a title issue that would need to be "cleared up before a deed in lieu could happen." The search revealed a quitclaim deed, recorded in 2003, wherein the LLC, via Thompson and his wife, deeded the property to Thompson's daughter, Jennifer Rebecca Thompson. Razook stated Thompson would "need to have Jennifer Rebecca Thompson quitclaim the property back to Coast Plaza LLC so that item is cleared." Razook further stated, "As mentioned in previous emails there is a lot to get done before a [d]eed in [l]ieu can be accepted." Razook provided Thompson with a detailed list of other things that RCH needed by particular dates.

¶9.    On December 6, 2016, Yentzen, on behalf of RCH, emailed Thompson a quitclaim deed for Jennifer's signature. In this email, Yentzen also advised Thompson that "the LLC was [administratively] dissolved in 2011 . . . and thus would need to be reinstated for a deed in lieu to be granted." Later that day, Jennifer signed the quitclaim deed, deeding the property back to the LLC. The Hancock County Chancery Clerk recorded the quitclaim deed on December 7, 2016.

¶10.    On December 9, 2016, Razook emailed Thompson with a "status update request" and advised that RCH had not heard from the Gagnon Estate and had "not received the money or most of the information required to be delivered by today." On December 13, 2016, Razook emailed Thompson again to confirm RCH's receipt of certain information and documentation but advised that other information and documentation were still needed. In response, Thompson advised RCH that the Gagnon Estate was "still gathering information"

5

and would not "share [its] financial information with [him]." Thompson also advised RCH that "[t]he estate has five years to open succession[,] and probate will take several years after succession."

¶11. On December 18, 2016, Thompson emailed RCH a two-page letter, on behalf of the LLC, objecting to foreclosure on the property. Razook replied to Thompson on December 19, 2016, and retracted RCH's offer to accept a deed in lieu of foreclosure:

> Mike,
>
> We are in receipt of your attached letter. RCH and Coast Plaza LLC never had any binding agreement where Coast Plaza LLC fully performed under all terms that would then require RCH to accept a deed in lieu or release the guarantors.
>
> So we are definitely clear, RCH hereby retracts any offers made regarding accepting a deed in lieu from Coast Plaza LLC.
>
> Further:
>
> On 10/29/16, I did email you with the option of a deed in lieu contingent on the specific condition that there were no other existing liens on the property. As we are all aware the title search revealed there was in fact another existing lien at that time. The existence of that lien further supports that RCH would not be bound by that email to accept a deed in lieu.
>
> Also, the 10/29/16 email and any of the correspondence following that email do not constitute an agreement, a modification of the loan documents or a waiver of any lender rights. In addition, prior to you taking action to remove that lien, RCH provided you with additional contingencies and deadlines which you failed to provide most of the documentation and failed to satisfy all contingencies on or before the stated deadlines.

(Emphasis in original).

¶12. On December 21, 2016, Coast Plaza filed a complaint to enforce the settlement

6

agreement, an application for a temporary restraining order, and a motion for a preliminary injunction. The chancellor issued a temporary restraining order enjoining RCH from proceeding with the December 30, 2016 foreclosure sale of the property. The chancellor also granted Coast Plaza's motion for a preliminary injunction enjoining RCH "from noticing or otherwise attempting another foreclosure sale . . . until the merits of [Coast Plaza's] claims [we]re heard." Additionally, the chancellor granted Coast Plaza's ore tenus motion to disqualify Yentzen from further representing RCH, finding that Yentzen "appears to have participated in the matter in such a way that he may indeed be called as a witness[.]"

¶13. On January 16, 2017, RCH filed a combined response asserting its affirmative defenses and answer to Coast Plaza's complaint as well as a motion to dismiss Coast Plaza's complaint and a request for damages. In the response, RCH contended Coast Plaza was incapable of executing a deed in lieu on November 29, 2016, for three reasons: (1) the LLC was dissolved and was not in good standing; (2) the LLC had previously conveyed the property to Jennifer via quitclaim deed dated March 10, 1999, and recorded April 25, 2003; and (3) the Gagnon Estate had not indicated a willingness to enter into any agreement with RCH to execute a deed in lieu.

¶14. On March 15, 2017, Thompson reinstated the LLC. Thompson had previously attempted to reinstate the LLC on December 6, 2016, pursuant to RCH's request. But the parties later discovered that Thompson had mistakenly formed a new "Coast Plaza LLC"

7

rather than reinstating the original LLC.[2]

¶15.    On May 31, 2017, the parties had a two-day trial on Coast Plaza's complaint to enforce the settlement agreement.  During trial, the parties disputed, among other things, whether the LLC had the authority to enter an agreement with RCH on November 30, 2016. RCH asserted that the Revised Mississippi Limited Liability Company Act required Coast Plaza to have a majority vote of the LLC's members to agree to RCH's offer of a deed in lieu of foreclosure because the property was the LLC's sole asset.  RCH further asserted that, due to Milton Gagnon's death, a personal representative of the Gagnon Estate had to agree to RCH's offer.  To support the Gagnon Estate's purported agreement to RCH's offer, Coast Plaza offered an affidavit of James G. Gagnon dated May 25, 2017, six days before trial.  The affidavit provides:

> Affiant, James G. Gagnon, having been duly sworn upon oath, testifies as follows:
>
>     (1) I am an adult citizen of the State of Louisiana, and I am above 21 years of age[] and am fully competent to testify as to matters set forth herein and do so based on my knowledge.
>
>     (2) Milton L. Gagnon passed testate on or about July 29, 2016.
>
>     (3) No succession has yet been opened for the Estate of Milton L. Gagnon.
>
>     (4) As the administrator and personal representative for the Estate of Milton L. Gagnon, I know that Milton L. Gagnon was a member of Coast

---

[2] Upon realizing the mistake, Thompson dissolved the new "Coast Plaza LLC" that was unintentionally formed on December 6, 2016.

Plaza, LLC, a Mississippi limited liability company.

(5) I am familiar with the factual background and allegations at issue in Coast Plaza, LLC's claims against RCH Mortgage Fund V, LLC concerning the strip shopping center located in Waveland, Mississippi.

(6) As the administrator and personal representative for the Estate of Milton L. Gagnon, I authorize Michael J. Thompson, as member and manager of Coa[s]t Plaza, LLC, to negotiate with RCH Mortgage Fund V, LLC.

(7) As the administrator and personal representative for the Estate of Milton [L]. Gagnon, I am providing Michael J. Thompson with proxy to vote Milton L. Gagnon's interests in Coast Plaza, LLC.

(8) As the administrator and personal representative for the Estate of Milton L. Gagnon, I authorize the law firm of Phelps Dunbar and Michael J. Thompson, Jr., Esq. to represent the Estate of Milton L. Gagnon in connection with Coast Plaza, LLC's claims against RCH Mortgage Fund V, LLC.

Further affiant sayeth not.[3]

¶16. Following trial, the chancellor issued his findings of fact from the bench. The chancellor found as follows:

[T]he offer was made to pursue a deed in lieu of foreclosure and there was an acceptance of that. But the industry itself requires – or any title transfer requires a whole host of things to be done.

. . . .

---

[3] RCH objected to entering James Gagnon's affidavit as an exhibit at trial. The chancellor allowed the affidavit to be entered into evidence. However, after trial, the Gagnon Estate filed a motion to revoke the affidavit and then filed a motion to withdraw and strike the motion to revoke the affidavit. The chancellor granted the motion to withdraw and strike the motion to revoke the affidavit. Then, the Gagnon Estate filed a second motion to strike the affidavit on November 15, 2017. In both motions to revoke, the Gagnon Estate disclaimed James Gagnon's authorization of Thompson's actions on behalf of Coast Plaza detailed in the affidavit. The chancellor does not appear to have ruled on the second motion.

When you can't convey or will not convey good title to the property, there's – it's over. And that's what [Coast Plaza] told [RCH] on December 13, 2016. It will take five years to open the succession and another two years after that to transfer title. Well, there's no sense in talking about any of the rest of it after that. The deal is done. It's over. I don't know if there's any reason to discuss anything further. [RCH] certainly [is]n't going to wait and should not be expected to wait seven years for [Coast Plaza] to transfer title to this property.

. . . .

When you have something as simple as an offer and acceptance on a shopping center, or the sale of it, or taking a deed in lieu of foreclosure, which is very similar, to me you have a whole host of blanks that haven't been filled in. . . . And so, there's a lot to it. In this case, you have a short email that says, we want to do a deed in lieu of foreclosure, and then it says, let me check with my partner. I've checked with my partner and we accept. That means all the rest of this stuff that I'm talking about that has to be done, y'all know it has to be done, both sides know it has to be done, that's not the end of the deal when you just say, we agree to do this. You have all those other things.

. . . .

It is clearly – the offer was we're going to take a deed in lieu of foreclosure and Mr. Thompson says, we can't produce a deed for seven years. That ends it. There's nothing else to talk about.

¶17. The chancellor entered a final judgment on June 19, 2017. In the judgment, the court found that "no settlement agreement was reached by or among the parties" and denied all relief sought by Coast Plaza. Coast Plaza now appeals, contending the chancellor erred (1) by allowing Yentzen to testify as an expert when he was not properly designated; (2) by allowing Yentzen to offer expert testimony that did not meet the requirements of Rule 702 of the Mississippi Rules of Evidence; (3) in its application of the Revised Mississippi Limited Liability Company Act; (4) by ruling the members of the LLC could not execute or

10

ratify the settlement agreement; (5) by ruling the Gagnon Estate, acting through its executor and personal representative, could not sign the deed in lieu as permitted by the Revised Mississippi Limited Liability Company Act; (6) by failing to find the parties agreed to a settlement; (7) by failing to enforce the settlement agreement; and (8) by failing to award punitive damages and attorney's fees. RCH cross-appeals, contending the chancellor erred in finding that a settlement agreement existed between the parties.

## STANDARD OF REVIEW

¶18. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003). "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." *Burns v. Haynes*, 913 So. 2d 424, 428 (¶10) (Miss. Ct. App. 2005). "A chancellor's findings will not be disturbed upon review by this Court unless the chancellor was manifestly wrong, clearly [erred], or applied the wrong legal standard." *Id*. "However, on issues of law, our standard of review is de novo." *Stroh v. Stroh*, 221 So. 3d 399, 406 (¶17) (Miss. Ct. App. 2017).

## ANALYSIS

### I.      Coast Plaza's Appeal

¶19. While Coast Plaza raises a number of issues on appeal, one overarching issue is dispositive. Because the LLC lacked the authority to agree to dispose of its only asset via a deed in lieu of foreclosure, we agree with the chancellor's holding that "no settlement

agreement was reached by . . . the parties[,]" and we affirm the chancellor's final judgment.

¶20.    Coast Plaza LLC was a Mississippi limited liability company, with two members, Thompson and Milton Gagnon. At the time of Milton Gagnon's death, the LLC did not have a written operating agreement. As a result, the LLC and its members are governed by the provisions of the Revised Mississippi Limited Liability Company Act (the "Act"), Mississippi Code Annotated sections 79-29-101 to -1317 (Rev. 2013). *See* Miss. Code Ann. § 79-29-123. The Act's statutory requirements serve as "default rules" governing limited liability companies that do not have an operating agreement; those requirements are not optional guidelines for limited liability companies' members to follow, or disregard, as convenient.

¶21.    Pursuant to the Act, the sale or disposition of assets that "would leave the limited liability company without a significant continuing business activity . . . must be approved by the members" via "the approval of at least a majority of the votes entitled to be cast on the asset sale agreement . . . ." Miss. Code Ann. § 79-29-233(a), (c). Here, Coast Plaza was attempting to dispose of its sole asset via a deed in lieu of foreclosure to RCH. Because Thompson and Milton Gagnon each owned half of the LLC, Coast Plaza needed the assent of both members to enter the purported settlement agreement with RCH.

¶22.    Regarding the death of a member, the Act provides:

> If a member who is an individual dies, a personal representative of the member's estate may exercise all rights for the purpose of settling the estate, including the governance rights that were held by such member at the time of the member's death and any power under an operating agreement of an

12

assignee to become a member.

Miss. Code Ann. § 79-29-709(2) (Rev. 2011). "'Personal representative' means, as to an individual, the executor, administrator, guardian, conservator or other legal representative thereof or the successor of such executor, administrator, guardian, conservator or legal representative." Miss. Code Ann. § 79-29-105(w).

¶23. The Act allows any matter requiring a vote to be accomplished by the members during a meeting, or by proxy, or through written consent:

> (a) Meetings of members may be held by means of telephone or other communications equipment by means of which all persons participating in the meeting can speak to and hear each other, and participation in a meeting pursuant to this subsection shall constitute presence in person at the meeting;
>
> (b) On any matter that is to be voted on, consented to or approved by members, or any action required or permitted to be taken by the members the members may take such action without a meeting, without prior notice and without a vote if a consent or consents *in writing*, setting forth the action so taken, shall be signed by the members owning at least the percent of the interests which would be necessary to authorize or take such action at a meeting at which all members entitled to vote thereon were present and voted.
>
> (c) On any matter that is to be voted on by members, the members may vote in person or by proxy, and the proxy may be granted *in writing, by means of electronic transmission or as otherwise permitted by applicable law.*

Miss. Code Ann. § 79-29-309(6)(a)-(c) (emphasis added). Thus, after his death, Coast Plaza could have obtained the vote of Milton Gagnon's LLC member interest in three ways: (1) by vote of the Gagnon Estate's personal representative during a members' meeting; (2) by consent executed by the Gagnon Estate's personal representative; or (3) by proxy, in accordance with the foregoing provisions of the Act.

13

¶24. The chancellor's final judgment in this matter provided "no settlement agreement was reached by or among the parties[.]" Although the chancellor did not include the specific grounds on which he based the finding that there was no agreement to enforce, Coast Plaza asserts that the chancellor misapplied the Mississippi Limited Liability Company Act and ignored the authority provided to a personal representative of a deceased member under section 79-29-709(2). Coast Plaza contends that "[p]er the Act, James Gagnon, as the [p]ersonal [r]epresentative of the Gagnon Estate, was authorized to vote Milton Gagnon's membership interest in Coast Plaza, LLC, including ratifying the parties' settlement agreement, and authorizing and signing the deed in lieu." While it is true that a personal representative of a deceased LLC member's estate may exercise that member's rights for the purpose of settling the deceased member's estate, we find Coast Plaza's contention is not supported by the record. To the contrary, we find no evidence to indicate that the LLC's members timely complied with the Act's clear requirements necessary to authorize the LLC to agree with RCH to dispose of the LLC's sole asset via a deed in lieu of foreclosure.

¶25. The record reflects that RCH, through its representative Razook, on November 29, 2016, proposed to accept a deed in lieu of foreclosure from the LLC provided there were "no liens or other debt on the property," and the parties agreed to "the documents needed." On November 30, 2016, Thompson responded to Razook's email and stated that he would be in touch after he met with one of the "prime movers" of the Gagnon Estate to "bring the Estate up to speed." Later that day, Thompson emailed Razook again, stating, "Be advised that your

14

offer is accepted." Assuming arguendo that Razook's initial email amounted to a contractual "offer,"[4] nothing in the contemporaneous exchanges between Coast Plaza and RCH evidences (1) a vote by a majority of the LLC's members (i.e., both Thompson and the Gagnon Estate's personal representative) to authorize the LLC to accept RCH's offer, (2) written consent from the Gagnon Estate's personal representative authorizing the LLC to accept RCH's offer, or (3) authority from the Gagnon Estate's personal representative "in writing, by means of electronic transmission or as otherwise permitted by applicable law" for Thompson to act as the Gagnon Estate's proxy. Although Thompson testified at trial that he "had conversations with James Gagnon and others in November" and that Thompson believed he had *verbally* been given the proxy of the Gagnon Estate on November 30, 2016, the record lacks supporting evidence sufficient to meet the Act's plain requirements. The record contains no company minutes, no consent resolution signed by a majority of the LLC members, no written consent signed by the Gagnon Estate, and no timely proxy from the Gagnon Estate's personal representative.

---

[4] In his findings from the bench, the chancellor appeared to question whether RCH's initial email proposal constitutes a contractual offer: "[T]o me you have a whole host of blanks that haven't been filled in . . . . In this case, you have a short email that says, we want to do a deed in lieu of foreclosure, and then it says, let me check with my partner. I've checked with my partner and we accept. That means all the rest of this stuff . . . has to be done, . . . both sides know it has to be done, that's not the end of the deal when you just say, we agree to do this. You have all those other things." RCH's initial emails with Thompson contain contingencies and caveats that belie a firm contractual offer, and our review of the record raises questions about whether the parties ever satisfied the conditions precedent to forming an enforceable contract.

15

¶26.    Instead, the record contains an affidavit from James Gagnon, as the purported personal representative of the Gagnon Estate, dated May 25, 2017, and offered as evidence at trial by Coast Plaza.[5] In his affidavit testimony, James Gagnon averred that "[n]o succession has yet been opened for the Estate of Milton L. Gagnon," but that, "[a]s the administrator and personal representative for the [Gagnon Estate], I authorize [Thompson], as member and manager of Coast Plaza, LLC, to negotiate with [RCH]" and further that "I am providing [Thompson] with proxy to vote [the Gagnon Estate]'s interests in Coast Plaza, LLC." To the extent that the belated affidavit from James Gagnon was an attempt to remedy Coast Plaza's noncompliance with the Act's requirements, it was too little, too late. While the affidavit ostensibly gives Thompson the Gagnon Estate's voting proxy and authorizes Thompson to negotiate for the LLC with RCH, it is by its terms only prospective, not retroactive. And even if the affidavit conferred retroactive authority to Thompson to act on behalf of the Gagnon Estate, by May 2017 there was no agreement with RCH to ratify.    RCH

---

[5] Coast Plaza and the Gagnon Estate's own actions and evidence undermine the force of the affidavit. *See supra* n.2. After trial, Coast Plaza filed a motion for reconsideration of the chancellor's decision, contending that the chancery court's findings at trial were based in part on a mistake. Specifically, Coast Plaza asserted "it was recently discovered that the Estate of Milton L. Gagnon opened succession in Jefferson Parish, Louisiana on November 16, 2016." It is unclear why James Gagnon, who was named as "Independent Executor" in the November 2016 Letters Testamentary, nonetheless swore in his May 2017 affidavit that "[n]o succession has yet been opened for the Estate of Milton L. Gagnon." It is also unclear why the Gagnon Estate failed to provide the Letters Testamentary any time prior to Coast Plaza's motion for reconsideration, and particularly during November and December 2016, when Thompson was negotiating with RCH. Regardless, the chancellor denied the motion for reconsideration, and Coast Plaza does not challenge that ruling on appeal.

16

unequivocally rescinded its offer to accept a deed in lieu of foreclosure on December 19, 2016.

¶27. Pursuant to section 79-29-233(c), the LLC needed the approval of both Thompson and the Gagnon Estate to agree to dispose of its sole asset via a deed in lieu of foreclosure to RCH. Nothing in the record shows that the Gagnon Estate voted to accept RCH's offer, consented in writing to accept RCH's offer, or timely authorized Thompson to vote as its proxy. Rather, the record reflects that the LLC lacked the necessary authority to accept RCH's offer on November 30, 2016.[6] Accordingly, the LLC could not validly accept RCH's offer, and there was no agreement for the chancellor to enforce.

¶28. Further, even if the parties had reached an initial agreement, the contract would have been frustrated by Coast Plaza's admitted inability to timely provide RCH with a deed. As stated by the chancellor, "Mr. Thompson says, we can't produce a deed for seven years. That ends it. There's nothing else to talk about." Once Thompson indicated that Coast Plaza could not convey a deed, potentially for years, it was not possible for the parties to pursue an agreement for a deed in lieu of foreclosure, and RCH could rescind its offer to do so. For the foregoing reasons, the chancellor correctly found no settlement agreement existed among

---

[6] Beyond the fact that the LLC lacked authority from its members to "accept" RCH's purported offer, as of November 30, 2016, the LLC did not even possess title to the property and had been administratively dissolved since 2011. But the parties agreeably resolved the title issue on December 6, 2016, when Thompson's daughter quitclaimed the property back to the LLC. Thompson also eventually reinstated the LLC on March 15, 2017, and "[t]he administrative dissolution of a limited liability company [does] not impair the validity of any contract . . . ." Miss. Code Ann. § 79-29-831(2).

17

the parties and denied Coast Plaza's complaint to enforce the settlement agreement.[7] *See* Miss. Code Ann. § 79-29-233(c).

¶29. Coast Plaza additionally contends that RCH's repudiation of the parties' settlement agreement was a breach of the implied covenant of good faith and fair dealing, which entitles it to punitive damages and attorney's fees. Coast Plaza failed to assert such a claim before the trial court. "Failure to raise an issue in a trial court causes the operation of a procedural bar on appeal." *Daniels v. Bains*, 967 So. 2d 77, 81 (¶13) (Miss. Ct. App. 2007).

¶30. Coast Plaza asserts that because it sought "all other general and equitable relief to which [it was] entitled," the issue was sufficiently preserved. We disagree. "This Court simply refuses to review any allegation of error which is unsupported by the record." *Douglas v. Blackmon*, 759 So. 2d 1217, 1220 (¶9) (Miss. 2000) (quoting *Vinson v. Johnson*, 493 So. 2d 947, 950 (Miss. 1986)). Although the covenant is implied in all contracts, any alleged breach of the covenant must be asserted at trial. Because Coast Plaza never asserted a claim for the breach of the implied covenant of good faith and fair dealing, it is barred from doing so on appeal.

## II. RCH's Cross-Appeal

¶31. In its cross-appeal, RCH argues the chancellor "erred in finding a settlement

---

[7] Because our holding that the chancellor correctly found that no settlement agreement existed between the parties does not depend on any issue as to whether Yentzen provided improper expert testimony during trial, we do not reach Coast Plaza's assignments of error regarding Yentzen's testimony.

agreement existed [among the parties]." But the final judgment specifically states that "the Court hereby finds no settlement agreement was reached by or among the parties. . . ." Accordingly, the chancellor granted the relief requested by RCH on appeal (i.e., that there was no settlement agreement among the parties). RCH more specifically argues that the chancellor erred in finding that Coast Plaza had the ability and authority to accept the settlement offer. Based on our previous discussion, we agree. To the extent that the chancellor indicated from the bench that Coast Plaza accepted RCH's offer, any error was harmless as the chancellor ultimately found no settlement agreement was reached and denied Coast Plaza's complaint to enforce the settlement agreement.

¶32. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**